CITY OF BRIDGEPORT *vs.* THE NEW YORK & NEW HAVE.
RAILROAD COMPANY.

An assessment for benefits, conferred by the laying out of a highway, is an exer-
cise of the taxing power, and in a general sense a tax; but is local, special,
and limited to a class of persons interested in a local improvement, who are
assumed to receive an equivalent for the assessments from the benefits conferred
by the improvement.

Such an assessment is not, in the common acceptation of the term, a tax; and
is not such within the meaning of the act of 1864, which imposes a general
tax upon all railroads, and exempts them from all other taxation.

Public and municipal corporations, under their general authority to lay out high-
ways, cannot take land for a parallel highway previously taken and occupied
by a railroad company, under and pursuant to their grant.   Presumptively
there is no necessity so urgent as to require it.   But they may lay out high-
ways *across* a railroad, because such lay-out does not dispossess the railroad
company, and being a more urgent and constantly occurring necessity, must
be presumed to have been contemplated by the parties to the grant.

The easement possessed by a railroad company in a limited portion of the land
adjoining a new highway, cannot be assessed for benefits assumed to be con-
ferred upon the company by the laying out of such new and adjoining highway;
but such benefits may be assessed upon the franchise of the company, where
they are direct, immediate, appreciable, and certain.   Contingent, remote in-
appreciable or uncertain benefits will not authorize such assessment.

Therefore where, in laying out a new highway, parallel with the line of a railroad and upon a curve, buildings and other objects which had somewhat obstructed and contracted the lines of sight from the road in turning the curve, were removed for the purpose of making the highway, and the railroad company was assessed for benefits conferred by thus extending its lines of sight, on the ground that such extension would enable the company to run its trains with greater speed and with less liability to casualties, and with less expense for maintaining gates or keeping flagmen at the crossings, and it appeared that the company in respect to such speed, gates and flagmen was subject to the control of the railroad commissioners,—it was holden that the benefits were too contingent, remote, and uncertain, and did not authorize the assessment.

AMICABLE SUBMISSION to the Superior Court upon the following agreed statement of facts :

The common council of the city of Bridgeport, by resolution adopted in the year 1868, determined to lay out an extension of Water Street from South Avenue, southerly and westerly along the north side of the track of the New York and New Haven Railroad, as far as Division Street. The lay-out through its whole extent appropriates some portion of the land over which by its charter the railroad company has a right of way.

Subsequently to the laying out of the extension, and under the provisions of the charter of the city, a committee was appointed by the mayor of the city to estimate and appraise the damages or benefits, as the case might be, resulting or accruing to any person or persons from the taking of land for the extension ; which committee estimated and reported the amount of benefits, over and above damages, accruing to the railroad company from such extension, at the sum of five thousand dollars.

A considerable part of the sum so assessed as benefits, was assessed upon the ground that by reason of the laying out of the extended street the lines of sight on the track would be extended, and the company would be enabled to run their trains at greater speed and with less liability to casualties, especially at points between the termini of the proposed street where the railroad was crossed by other streets of the city ; and that the company would not be required, so soon at least as they would otherwise be, to maintain gates and keep flag-

men at such crossings; and that the company would be able to operate their road more conveniently, economically and safely, and that thereby their corporate franchise would be benefitted and its value increased.

The city claims that the committee had the power under the charter of the city to take into consideration and estimate such benefits to the corporate franchise of the company, and that the company are liable to pay the same. The company claim that the committee had no such power, and that they are not liable to pay such portion of the sum assessed as was assessed on account of such benefits to their franchise.

And the question was submitted, whether,·in the estimate of damages and benefits, the franchise of the railroad company was properly a subject of assessment.

Upon these facts the case was reserved by the Superior Court for the advice of this court.

The case was argued at the February term, 1869, by *O. S. Seymour* and *Sumner* for the plaintiffs, and by *Beardsley* and *Child* for the defendants, and by order of the court was re-argued at the present term.

*I. Sumner*, of Massachusetts, and *S. B. Sumner*. for the plaintiffs.

1. The authority to make the assessment is under the right of eminent domain. Vattel, book I, chap. 20, § 244; Angell on Highways, §§ 76, 77, 78; 1 Redfield on Railways, § 63; *City of Chicago* v. *Baer*, 42 Ill., 311; *Appeal of North Beach & Mission R. R. Co.*, 32 Cal., 499; *Crosley* v. *Hanover*, 36 N. Hamp., 404; *Piscataqua Bridge* v. *N. Hampshire Bridge*, 7 N. Hamp., 35; *Backus* v. *Lebanon*, 11 N. Hamp., 19; *City of Chicago* v. *Larned*, 34 Ill., 203; *King* v. *Portland*, 2 Oregon, 146. If the assessment is in the nature of a tax it does not change the authority.

2. The legislature may exercise the right directly, or through subordinate instrumentalities. 2 Hilliard on Real Prop., 588; *Clark* v. *Saybrook*, 21 Conn., 324.

3. The authority to take or appropriate property under

VOL. XXXVI.—33

right of eminent domain, for public use, is an *inherent* right of sovereignty which no legislature can part with, or restrict by any stipulations whatever. It is an indestructible prerogative which cannot be dispensed with in favor of any person, body politic, property or franchise whatsoever. 1 Redfield on Railways, § 70, note, and cases cited; *Piscataqua Bridge* v. *New Hampshire Bridge*, 7 N. Hamp., 35; *Backus* v. *Lebanon*, 11 N. Hamp., 19; *Varick* v. *Smith*, 5 Paige, 137.

4. The exercise of this right, on payment of just compensation, is no interference with the obligations of contracts. 1 Redfield on Railways, sec. 69, art. 11; *Enfield Toll Bridge Co.* v. *Hartford & New Haven R. R. Co.*, 17 Conn., 40, 454; *Springfield* v. *Connecticut River R. R. Co.*, 4 Cush., 63; *Central Bridge Corporation* v. *City of Lowell*, 4 Gray, 482.

5. The sovereign power may take the franchise or property of a corporation and apply them to another and a different use, the same as in the case of individuals, rendering compensation in the same way. 20 Monthly Law Reporter, 486; Angell on Highways, § 92; *Old Colony R. R. Co.* v. *County of Plymouth*, 14 Gray, 162; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420; *Enfield Bridge Company* v. *Hartford & New Haven R. R. Co.*, supra; *West River Bridge Co.* v. *Dix*, 6 How., 507; *White River Turnpike Co.* v. *Vermont Central R. R. Co.*, 21 Verm., 590; *Illinois & Michigan Canal Co.* v. *Chicago & Rock Island R. R. Co.*, 14 Ill., 314; *Seneca Road Co.* v. *Auburn & Rochester R. R. Co.*, 5 Hill, 170; 3 Kinne's Law Comp., 320; *Armington* v. *Town of Barnet*, 15 Verm., 745; *Springfield* v. *Connecticut River R. R. Co.*, 4 Cush., 63; 2 Washb. Real Prop., 23.

6. Corporations like the defendant corporation, have no rights, to be recognized in a proceeding like this, as peculiarly sacred or superior to those of a private individual. Remarks of *Storrs, J.*, in *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 306; 1 Redfield on Railways, § 70; *Armington* v. *Town of Barnet*, 15 Verm., 745; *Piscataqua Bridge Co.* v. *N. Hamp. Bridge Co.*, 7 N. Hamp., 67; *Backus* v. *Lebanon*, 11 N. Hamp., 23.

7.  In this case, the power exercised under the charter of the city of Bridgeport was in terms fully granted.  Charter, §§ 31–34.  Corporations, whether specially mentioned or not, are liable to the same extent as natural persons to have their property assessed.  They are *quasi* inhabitants in the place where their land is, and have a *situs* there.  In this case, to all practical and lawful intents, the respondent corporation is a citizen of Bridgeport.  Angell & Ames on Corp., §§ 439, 440, 441, 442; *Albany & Schenectady R. R. Co.* v. *Osborn,* 12 Barb., 223.  But the charter in terms mentions " corporations" as subjects of notice, &c., in section 32.

8.  The land of the company held under its franchise was subject to assessment, and there is nothing in the record to show but that the committee, under the charter, apportioned among the individual owners of lands and the company, according to the damages or benefits each received ; and as to the correctness of the apportionment, we submit that no question here is open.  *Appeal of North Beach & Mission R. R. Co.,* 32 Cal., 499 ; *City of Chicago* v. *Baer,* 41 Ill., 311 ; *People* v. *Mayor &c. of Brooklyn,* 4 Comst., 431, 442 ; *Varick* v. *Smith,* 5 Paige, 137 ; *Armington* v. *Barnet,* 15 Verm., 747 ; *Northern &c. R. R. Co.* v. *Conelly,* 10 Ohio S. R., 159 ; Angell & Ames on Corp., § 144.

9.  It is asked on the part of the defendants why the company should pay for a benefit which is supposed to be in excess of a damage, when no damage could exist ?  In reply it would suffice to say that benefits are assessed in the case of almost every lay-out of a street, upon persons residing in the neighborhood whose land is not touched by the street itself.  But here a part of the company's easement in land is taken.  The company's right to take and hold land is an indispensable part of their franchise.  The franchise would be worthless without such right.  This easement is perpetual.  Having located their right of way, the company cannot change the location.  2 Redfield on Railways, § 233, art. 1 ; 2 Hilliard Real Prop., 590.  Though technically called an easement it is really more.  1 Redfield on Railways, § 69, art. 11.

10.  The fact that the company paid a *bonus,* or is exempt

from ordinary taxation partly or wholly, does not exempt it from the assessment or apportionment here made. Angell on Highways, § 172 ; *Matter of Mayor &c. of N. York*, 11 Johns., 77. To pay for the opening, widening or improving of a street or public avenue in a ratio to the benefit or advantage received from it, is no burden, and therefore no tax. *Sharp* v. *Speir*, 4 Hill, 76 ; *Livingston* v. *Mayor &c. of N. York*, 8 Wend., 85, 101 ; *Paterson* v. *Society &c.*, 4 Zabr., 385 ; *Mayor &c. of Baltimore* v. *Green Mount Cemetery*, 7 Maryl., 517 ; *N. York & Erie R. R. Co.* v. *Sabin*, 26 Penn. S. R., 242 ; *City of Chicago* v. *Larned*, 34 Ill., 203 ; *Mechanics' Bank* v. *Debolt*, 1 Ohio S. R., 591.

11. The city not only had the power here exercised, but were bound to exercise it by including all who are assessable, in order to make a lawful assessment. Their proceedings would have been invalid if they had omitted the defendants. *City of Chicago* v. *Baer*, 41 Ill., 311 ; *City of Chicago* v. *Larned*, 34 Ill., 203.

12. As to our remedy, whether by lien or otherwise, it is not a question open here ; nor, we submit, is it of any difficulty if it were an open question. *Appeal of North Beach & Mission R. R. Co.*, 32 Cal., 520. It can make no difference that the stock of the railroad company may be regarded as personal estate. 1 Redfield on Railw., § 31, note 8 ; *Cumberland &c. Railway* v. *Portland*, 37 Maine, 444.

13. The case of *Inhabitants of Worcester* v. *Western R. R. Co.*, 4 Met., 564, cited by the defendants, has no bearing here. That case arose under the general laws of Massachusetts relative to taxes for public purposes. In the defendant corporation in that case the commonwealth was a large stockholder, with a right to purchase the entire franchise. If that decision is at all sustainable, it is because the state is such owner, for by statute property of the commonwealth is not taxable, which, to be sure, is not the ground on which the decision is put by the court. The cases of *Providence Gas Co.* v. *Thurber*, 2 R. Isl., 21, and *Providence & Worcester R. R. Co.* v. *Wright*, 2 R. Isl., 462, conflict with that decision. See also *Albany & Schenectady R. R. Co.* v. *Osborn*, 12 Barb.,

225, and *Albany & West Stockbridge R. R. Co.* v. *Canaan,* 16 Barb., 244. It is also strongly questioned in 2 Redfield on Railways, § 229, art. 13.

*Beardsley* and *Child,* for the defendants, cited 1 Redfield on Railways, § 69; *Weston* v. *Foster,* 7 Met., 299; *Owners of Ground &c.* v. *Mayor &c. of Albany,* 15 Wend., 374; *Matter of Albany Street,* 11 id., 149; *Matter of William & Anthony Streets,* 19 id., 690, 691; *Inhabitants of Worcester* v. *Western R. R. Co.,* 4 Met., 564; *Inhabitants of Wayland* v. *County Commissioners of Middlesex,* 4 Gray, 500; *Old Colony R. R. Co.* v. *County of Plymouth,* 14 id., 155; *State* v. *City of New Brunswick,* 30 N. Jersey, 395; *State Bank of Ohio* v. *Knoop,* 16 How., 376; *Enfield Toll Bridge Co.* v. *Hartford & N. Haven R. R. Co.,* 17 Conn., 40; *Clark* v. *Saybrook,* 21 id., 323; *Nicholson* v. *N. York & N. Haven R. R. Co.,* 22 id., 88; *Nichols* v. *Bridgeport,* 23 id., 207; *Judson* v. *Bridgeport,* 25 id., 429; *Trinity College* v. *Hartford,* 32 id., 452; *Palmer Co.* v. *Ferrill,* 17 Pick., 58; *People* v. *Mayor &c. of Brooklyn,* 4 Comst., 419; *Dorgan* v. *City of Boston,* 12 Allen, 223; *Bangor & Piscataquis R. R. Co.* v. *Harris,* 21 Maine, 533; *Boston & Maine R. R. Co.* v. *County of Middlesex,* 1 Allen 324; *Boston & Lowell R. R. Co.* v. *Salem & Lowell R. R. Co.,* 2 Gray, 36; Ang. on Highways, § 415; 1 Redfield on Railways, § 133; 2 id., § 228.

BUTLER, J. Before entering upon a consideration of the principal question raised in this case, it may be well to dispose of some incidental claims made by the defendant corporation.

It is claimed by the defendants that by the act of 1864 (Revised Statutes, page 717, sec. 46,) a heavy tax is imposed upon their franchise, payable directly to the state treasury, and that it is provided by the law which imposes that tax that it shall be in lieu of all other taxes, and that therefore the assessment in question, being a tax, could not be imposed. I do not think the claim well founded.

The exemption referred to is as follows: "And this sum or

tax shall take the place and be in lieu of all other taxes on railroads and horse railroad property and franchises within this state."

. It has never been claimed by the city of Bridgeport or by any of the municipal corporations of the state, that they had power to tax railroad property situated within their limits, or the franchise of any railroad corporation, *as such*. The property and franchise of the defendant corporation, like those of all others constituted by the laws of the state, is represented by the shares of capital stock, and, prior to the passage of the law referred to, those shares were subject to taxation by the state and municipal corporations, as part of the personal property of their owners. No other mode of taxing such corporations was then practiced. In a great public exigency, when the state was greatly in need of money, it imposed a direct tax upon railroad and other corporations, exempting them from other taxes by the provision relied upon. It is clear that by that exemption the legislature intended to exempt the shares of stock from all liability to taxation. Did they intend anything more? I think not. The shares of stock were not then liable to assessments for benefits like that in question, nor were the railroad companies then supposed to be so liable, except for land outside of their tracks which they owned in fee; nor were those companies then subject to any general tax; and if such an assessment is a tax as claimed, I think it would be a strained construction of the proviso to assume that the legislature contemplated the exemption of railroad franchises from such assessments.

It is doubtless true that such an assessment of benefits is an exercise of the taxing power, and, in a general sense, a tax. It was so regarded by this court in *Nichols* v. *Bridgeport*, 23 Conn., 207, to which we have been referred. But it is never spoken of in the charters of cities and boroughs, or in the general law, or in popular intercourse, as a tax. And although thus strictly and in a general sense a tax, it is one of a peculiar nature. It is a *local* assessment imposed occasionally, as required, upon a limited class of persons inter-

ested in a *local* improvement; who are assumed to be bene-
fitted.by the improvement to the extent of the assessment;
and it is imposed and collected as an *equivalent* for that
*benefit*, and to pay for the improvement. It has consequently
never been regarded as a tax, or termed such in legislative
proceedings, in our public or private laws, or in popular inter-
course. In all these it is known only and distinctively as
" an assessment for benefits," and it cannot safely be pre-
sumed that the legislature had such assessments in contempla-
tion when they passed the act of 1864.

2. It appears from the finding that in laying out the high-
way in question, a portion of the land taken and appropriated
by the railroad company for its use under its charter, was
taken and appropriated as part of the highway through its
whole extent. It does not appear that it was necessary to
take it, and the necessity cannot be presumed. As matter of
fact, outside the record, we all know that it was not. Whether
or not it was so taken with a view to lay a foundation for
assessing the contemplated benefits upon the remaining *land*,
or the remaining *interest* of the company *in the land*, I do not
know, nor is it material to enquire. I am satisfied that such
an assessment could not be made upon either, and that if such
was the original intention it was wisely abandoned.

In the first place, it is questionable whether the city of
Bridgeport had power thus to take the land appropriated and
occupied by the railroad, for such a purpose. The city of
Bridgeport is authorized by its charter to lay out *necessary*
public highways. In doing this its officers act under author-
ity delegated by the legislature in general terms, and in the
exercise of that power the officers of the city perform the
same public duty and have substantially the same authority
within their territorial limits by the provisions of their char-
ter that the officers of boroughs and towns have and exercise
in like cases and no more, and that is, an authority to lay out
such streets and highways as public convenience and neces-
sity may require. In doing that they may take and appro-
priate any property which has not been before subjected to
the eminent domain of the state. But is the ribbon of land

which the legislature in the exercise of that right of eminent domain have authorized this railroad company to take, *appropriate* and *hold* for the construction of a railroad, subject to be taken from them in whole or in part, and in the whole if in part, under a power to lay out highways previously given in *general terms*, by the authorities of every town, city or borough between New Haven and the western line of the state, and appropriated for the purposes of a highway ? This question has not, to my knowledge, been judicially determined, but it would seem upon principle that it must be answered in the negative.

The officers of towns in laying out highways act under a general authority, and those of the plaintiff city had a special but not more extensive power. The railroad company act under and possess a *special and exclusive grant* and that grant is a *contract*. The legislature has virtually said to them : " We give you the privilege of exercising the public right of eminent domain over that ribbon of land, to the extent necessary to acquire, possess and enjoy an easement, *and such exclusive control as may be necessary to its enjoyment*, in consideration that you will erect, maintain and operate a railroad upon it." Did they intend that that easement should be subject to be taken away from the company, in whole or in part, by the local authorities for the purpose of highways ? The question in this aspect is one of presumed intent, and I think from the very nature of the case the legislature cannot be presumed to have intended to make, or the company to receive, such a limited and subordinate grant.

Undoubtedly the legislature may repeal the charter of the defendants and destroy their right in the land, for they have reserved the power to do it. And so they may authorize another company to appropriate its property and its franchise, upon making just compensation therefor, and may authorize a city to assess its franchise for benefits. But the intention to do so must be clearly and unequivocally expressed. No power is given to the city of Bridgeport in express terms to take the interest of the defendants in the land. Whatever power its officers have, is given. as I have said, in general

terms, and it has been well said that a general power, thus given, ought not to be construed to authorize the taking of land already appropriated to a highly-important public use. *Boston Water Power Co.* v. *Boston & Worcester R. R. Co.,* 23 Pick., 397, 398. In relation to the laying of highways *across* the land taken for railroads, such an intention may well be presumed, for in respect to them, in our growing country, a necessity must be anticipated, and therefore must be presumed to have been contemplated. But with respect to parallel highways no such necessity can exist, for the power given to appropriate the adjoining land of individual proprietors, *however occupied,* and *to any necessary extent,* is ample, and therefore as to parallel highways no such intent can be presumed. Moreover, the power to take and appropriate even parallel highways is given to this and other railroads by charter, and in the general law. If so taken, can the officers of this and other cities dispossess them again whenever they think public convenience or necessity require it? And if they do, cannot the railroad company re-take it? Which is then to be the dominant corporation and ultimately prevail in the struggle? The solution of this question in my mind is, that when the railroad company have appropriated land under their grant with the approbation of the commissioners, their right was intended to be and is exclusive, except as to crossings, which are an absolute necessity. "The grant of land for one public use," says Chief Justice Shaw, "must yield to another *more urgent,*" (4 Cush., 63,) and the railroad is treated by the legislature as the more urgent and exclusive use, and such it is in effect.

And in the second place, the railroad company have a qualified easement or right in the land for a *specific use,* and the value of their right or easement in the land cannot be directly and substantially increased by the existence of the highway. There are many cases in this country where land held for a specific use, which for that reason could not be enhanced in value by the laying out of a highway, has been holden improperly subjected to assessment for benefits. Such was the case of *The matter of Albany street,* (11 Wend., 149,) where a highway in the

city of New York was laid out through a cemetery holden by a church for the specific purpose of a burying ground only, and benefits were assessed upon the remaining land. So in the case of *The Owners of Grounds, etc.,* v. *The Mayor, &c., of Albany,* (15 Wend.; 374,) where lands were specifically appropriated to and used by a water-works company for a reservoir. In this case the defendants have a property. or easement in the land, for a specific purpose and use, and that property or easement cannot be enhanced directly and substantially in value by the laying out and construction of the highway upon and adjoining it.

In the third place, the city has not, in point of fact, assessed the benefits in question, upon the interest of the company in the adjoining land, but upon their entire franchise, on the distinct ground that the corporate franchise would be benefitted and its value increased, because by the permanent removal and prevention of obstructions to vision the lines of sight on the road would be extended and the company be thereby enabled to run its trains at greater speed, with less liability to casualties or to possible future expense of maintaining gates or flagmen at crossings. This is the sole and only ground upon which the assessment is based, and in connection with it as so stated, the simple and single question is put to us, "whether, in the estimate of damages and benefits, the franchise of said railroad corporation is properly a subject of assessment." We come then to a consideration of the question whether, for the reasons stated, the benefits could legally be assessed upon the franchise of the company. Upon full consideration we are satisfied that they could not and that the assessment is void.

The term "franchise" has several significations and there is some confusion in its use. The better opinion, deduced from the authorities, seems to be that it consists of the entire privileges embraced in and constituting the grant. It does not then embrace the property acquired by the exercise of the franchise, and this assessment is not upon any property of the company. No property capable of assignable or marketable value is assessed, but the assessment is upon the grant or

franchise and a supposed increase of its value by reason of the fact that one of the powers conferred can be exercised with greater facility and safety. Perhaps it sufficiently appears that the assessment is upon the corporation as the possessors or owners of the franchise, and if so one of the defendants' objections must fail. The appraisers are authorized by the city charter to appraise "benefits"—"resulting"—"to any person"—from "such lay-out," and that language certainly authorized the assessment against the corporation, if otherwise legal. Assuming then that it is an assessment upon the company grounded on a benefit to its franchise, is it legal ?

The franchise, as we have said, has no assignable or marketable value, and an increased value to the franchise must be such as to increase the value of its property and stock. An assessment upon a franchise is legal if grounded on a direct and immediate benefit which is of that character, and we can conceive of cases where the exercise of one of the privileges embraced in the franchise might be so directly and immediately aided as to increase the value of the stock without increasing the value of any property.

But in this case we do not think the grounds of the assessment are of that character. The language of the finding is very general, but it is obvious that the benefits on which the assessment is grounded consist of an assumed contingent avoidance of the danger of casualties where some of the highways of the city cross the railroad, or the assumed avoidance of expense to which the company might be made liable. The extension of the lines of sight and the running at greater speed, in themselves confer no benefit. The benefit really consists in the consequent avoidance of danger and precautionary expense. We are satisfied that an assessment cannot be legally grounded on such assumed benefits, for several reasons.

First. There can be no pretence that the highway, *as such*, is of any benefit whatever to the defendants. The assumed benefit arises wholly from the permanent removal, *before constructing the highway* and in order to construct it, of certain buildings which had obstructed the view from the railroad train to some extent, and the company have and can have no

beneficial use of the highway nor any benefit from it except the incidental one of preventing the renewal of the obstructions, and that clearly is not a use of the highway.

Second. The speed of the trains is subject to the regulation and control of the general railroad commissioners by statute, and it does not appear, nor can it be presumed, that the commissioners would authorize the company to run their trains with any greater speed across the streets of the city because of the removal of those buildings and the extension of the lines of sight, and so far forth the assumed benefit is not certain but contingent.

Third. The assumed benefit, so far as it is grounded on the ability of the company to run their trains with greater speed and with less danger of casualties at the crossings, is not an exclusive, special privilege, but an incidental benefit enjoyed by every member of the community who has occasion to pass the crossings, for the increased ability of every such person to avoid the trains, by reason of the extension of his lines of sight, is the same as that of the officers on the train to avoid him. Watchfulness on the part of both is a duty. There is therefore no reason why every man whose business takes him over the railroad, and who by reason of the extension of his lines of sight can cross with greater safety, should not be assessed for benefits as well as the railroad company.

Fourth. The real grounds on which this assessment is based, namely, a less liability to casualties at the crossings and less danger of being subjected in the indefinite future to the expenses of gates and flagmen, are not direct and immediate, but contingent and remote. No case has been read to us where an assessment has been grounded on such benefits and sustained. Such an assessment was attempted in the case of *The State* v. *Newark*, 2 Dutcher, 519, and holden void. The case cited from the 32d California, on which the plaintiffs have very much relied, was the case of a horse railroad. The assessment was grounded on the ownership by the company of an easement in the street, and the idea that the widening of the street would increase the number of passengers in the defendants' cars, and consequently their busi-

ness and profits.   The court sustained the assessment very properly on that ground, but they took occasion to distinguish the case from the case of *The State* v. *Newark* in the 2d of Dutcher, because in the latter case the railroad was run by steam without stopping in the street, and no benefit to its business or from increased value of its stock from the widening of the street could be presumed.

On the other hand, there have been many decisions where new highways have been laid across railroads and the railroad company have claimed damages for increased liability to accidents at the crossings or increased expense of ringing the bell or for liability to be ordered by the commissioner to build a bridge over the track or keep gates or flagmen.   All such claims for damages, and all claims that were not *direct and immediate burdens,* have been uniformly holden too contingent and remote to be the basis of an assessment for damages.   The same principle was recognized by our own court in the case of *Clark* v. *Saybrook,* 21 Conn., 323.   The principle is applicable to an assessment for benefits as well as an assessment for damages, and the benefit must clearly appear to be direct, immediate and certain.   It does not so appear in this case.

For these reasons we are of opinion that, so far as the assessment in question upon the franchise of the company was grounded on the assumed benefits expected to result from the removal of obstructions and the extension of the lines of vision in the particulars named, it was unauthorized and illegal; and if it forms an undistinguishable and inseparable part of the whole assessment against the defendants, the whole assessment is void.

The Superior Court must therefore be advised to render judgment for the defendants.

In this opinion the other judges concurred.