[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Shoreline Care Limited Partnership (hereafter "Shoreline") has timely taken an appeal under General Statutes 7-250
from an assessment of sewer benefits made by the defendant Town of North Branford (hereafter "Town") through the defendant Town of North Branford Water Pollution Control Authority (hereafter "Authority"). Shoreline's amended complaint on this appeal is in three counts.
In its first count the following allegations are made: Shoreline owns and operates a life care center, called Evergreen Woods (hereafter "Evergreen") on approximately 88 acres of land it owns in North Branford, which land is improved by multi-residential living units, a skilled nursing facility and other buildings with certain amenities. The Town has designated the Authority as its water pollution control authority under Chapter 103 of the General Statutes. It alleges in paragraph 4 that the Authority has adopted regulations on the layout and assessment of sanitary sewers, one of which regulations permits a developer or other landowner, such as Shoreline, to enter into agreements with it to provide for the construction of sanitary sewers by and at the expense of the developer and to have those sanitary sewers discharge into the sanitary sewer system of the Town. In paragraph 5 it alleges that pursuant to such an agreement between Shoreline and the Authority dated September 11, 1989, Shoreline constructed at its sole expense a sanitary sewer system to service Evergreen.[1] It also alleged that the regulations also provided that the developer who constructs such a sewer system shall pay to the Town "special connection fees" in lieu of benefit assessments for permission to connect to the Town's sanitary sewer system; that the special connection fees "shall be equivalent to the benefit assessment in place for the portion of sanitary sewer to which the developer proposes to connect"; and that the developer shall be entitled to an "allowance" against the special connection fee of up to two-third CT Page 8431 (2/3) of the benefit assessment established in the sewer district if the sanitary sewer system on the developer's land was constructed at no cost to the Town.
The first count goes on to allege that by notice dated March 19, 1992, the Town by the Authority levied benefit assessment for properties benefitted [benefited] by the construction of sanitary sewers against the property of Shoreline and filed the notice thereof with its Town Clerk on March 19, 1992. The assessment against Shoreline's property was in the amount of $148,755.00.
Paragraph eight which is the final allegation of the first count alleges that this assessment was excessive and unlawful in that:
 "a. The assessment was greater than the unit assessment of the sewer interception or lateral to which the Evergreen Woods sewer system is attached.
 b. There was no allowance permitted to the plaintiff as required by the Regulations where, as here, the plaintiff has constructed the Evergreen Woods sewer system at no cost to the Town.
 c. The assessment exceeds the special benefit to accrue to the plaintiff's property in violation of Section 7-249 of the General Statutes."
In its second count Shoreline realleges all its allegations of its first count except paragraph eight but adds this further allegation:
 "The Regulations of the Authority permitting assessment of special connection fees are illegal and invalid in that:
 a. The provision of the Regulations that the special connection fee shall be equivalent to the benefit assessment in place for the portion of sanitary sewer to which the developer proposes to connect is in violation of the provision of Section 7-249 of the CT Page 8432 General Statutes which prohibits a sewer assessment from exceeding the special benefit to accrue to the property.
 b. The limitation of an allowance against the assessment to two-thirds (2/3) of the benefit assessment is arbitrary and in violation of such provision of Section 7-249
of the General Statutes."
In Shoreline's third count it again realleges all the allegations of the first count (except paragraph eight) and adds the following allegations:
 "8. The Authority is attempting to make a charge against the plaintiff for connection to the sewer system of the Town.
 9. Section 7-255 contains provisions for the imposition of connection charges by a water pollution control authority such as the defendant Authority.
 10. The Authority has failed to make a valid connection charge against the plaintiff under the provisions of Section 7-255 in that:
 a. The Authority did not hold a public hearing as required by Section 7-255 before establishing the connection charge against the plaintiff and did not publish the notices or file copies of the charges as required by that Section.
 b. In establishing the connection charge, the Authority failed to take into account the standards imposed by Section 7-255 for the determination of connection charges."
The relief sought is the following:
 a. That the assessment be reduced to reflect only the benefits accruing to CT Page 8433 plaintiff's property, as required by law.
 b. That the Court determine that the Regulations of the defendant Authority permitting assessment of special connection fees are illegal and invalid.
 c. That the Court determine that the special connection fees assessed against the plaintiff were not validly imposed under Section 7-255
of the General Statutes.
 d. That the plaintiff have such other and further relief as shall to justice and equity appertain.
The claims of Shoreline, which we develop below, are: (1) Since a town may only make a sewer benefit assessment under 7-249
to cover its costs of sewer construction, the Town of North Branford may not assess Shoreline because this town has incurred no such costs, (2) since a town, under 7-249, may not make a sewer assessment in excess of the special benefit accruing to the property, the Town of North Branford may not make an assessment against Shoreline who has received no benefit whatsoever from the Town, and (3) since the Town of North Branford has made a sewer benefit assessment against under General Statutes 7-249, it may not now claim any other basis for a charge against Shoreline.
The Town, on the other hand, makes the following claims: (1) The rights of the parties are governed by their agreement of September 11, 1989[2], and (2) Shoreline has failed to overcome the presumption of validity of the benefit assessment. It breaks down the latter claim in its brief and claims that the statutory scheme permits an assessment of benefit charges in the factual circumstances of this case, that Shoreline's property is benefited by the Section A Sewerage system and that the assessment is not excessive.
General Statutes 7-249 authorizes municipalities to levy assessments upon properties specially benefited by the construction and establishment of a sewerage system. Bridge Street Associates v. Water Pollution Control Authority, 15 Conn. App. 140, 145
(1988). In discussing special assessments such as those under 249, we note that our Supreme Court has said: CT Page 8434
 "Special assessments for local improvements, although bottomed on the taxing power, are based on the principle of special benefit to property. `It is a local assessment imposed occasionally, as required, upon a limited class of persons interested in a local improvement; who are assumed to be benefitted [benefited] by the improvement to the extent of the assessment. . . .' Bridgeport v. New York N.H.R. Co., 36 Conn. 255, 262-63 (1869). `The demand for the special contribution is justified by the fact that those who are to make it, while they are made to bear the cost of the public work, are supposed to suffer no pecuniary loss thereby, because their property is increased in value to an amount at least equal to the sum they are required to pay. 2 Cooley on Taxation (3d Ed.) 1153; 1 Page Jones, Taxation by Assessment, 35, 39.' Whitmore v. Hartford, 96 Conn. 511, 524, 114 A. 686 (1921; Vaill v. Sewer Commission, 168 Conn. 514, 518, 362 A.2d 885 (1975)."
Katz v. West Hartford, 191 Conn. 594, 602 (1983). On an appeal under 7-249 from a special benefit assessment under 7-249, there arises a presumption as to the "regularity, validity and correctness of a special benefit assessment that imposes on one challenging the assessment the burden of proof." Tower Business Park Assoc. No. 1 Ltd. Partnership v. Water Pollution Control Authority, 213 Conn. 112, 117 (1989); Anderson v. Litchfield,4 Conn. App. 24, 28 (1985). The challenger has the burden of proof overcoming this presumption "by introducing competent evidence that the assessment is greater than the increase in the market value of the property due to the improvement." Tower Business Park Assoc. No. 1 Ltd. Partnership v. Water Pollution Control Authority, supra 117, quoting Katz v. West Hartford, 191 Conn. 594, 603 (1983). It has been stated that the presumption, however, "may be rebutted by the production of sufficient and persuasive contradictory evidence. [Katz v. West Hartford, supra 603]. Evidence of the fact that the special benefit assessment exceeds the special benefit must have actual persuasive effect, in that it convinces the trier that the nonvalidity of the presumption is as probable as its validity. [Katz v. West Hartford, supra 603, n. 3]." Anderson v. Litchfield, supra, 28; see Bridge Street Associates, supra, 143-144. Section 7-249 expressly provides that "No assessment shall be made against CT Page 8435 any property in excess of the special benefit to accrue to such property. . . ." Whether an assessment under 7-249 exceeds the requisite special benefit is a question of fact. Gainer-Stafford Industries Inc. v. Water Pollution Control Authority, 192 Conn. 635,647 (1984), Anderson v. Litchfield, 4 Conn. App. 24, 29
(1985).
The Town has no sewerage disposal plant of its own. This, according to the Town Engineer was due to the topography of that Town and so arrangements for sewerage disposal was made with three other towns. Sewerage generated in the Town is discharged and disposed of in three abutting towns, those towns being Branford, North Haven and East Haven. The Town is divided into three sewage districts, i.e. Districts "A", "B" and "C". District "A"'s sewerage is discharged into the Branford sewage system, that of District "B" into that of East Haven, and that of District "C" into North Haven. The Shoreline property is in District "A" which drains into the Branford system. The cost per unit for a special connection for property situated in District "A" was $1,055.00 per unit; this was the unit cost for any property owner in District "A". Shoreline, however, did not and has not connected with any sewer constructed by the Town in District "A" or, for that matter, with any sewer constructed by the Town in North Branford.
Before the construction by Shoreline of any Evergreen Woods buildings, Shoreline considered how to handle the sewerage problem. It had earlier considered developing their North Branford property as an industrial park which was permissible under the existing zoning and which permitted a higher daily gallonage sewerage use than the use for which Shoreline decided to develop their land, i.e., the Shoreline life-care facility referred to above. Shoreline decided against seeking to tie the Evergreen Woods project into the Town sewerage system not for financial reasons but, rather, because to do so would require obtaining easements from upwards of half a dozen property owners and it did not prefer to deal with private property owners.
On September 11, 1989, by an agreement between the Town and Shoreline, it was provided Shoreline would, bearing the full cost of the construction of the proposed improvements, including related appurtenances, "build, on the proposed Evergreen Woods development" a sanitary sewer system and that it would "own and maintain all the sanitary sewer lines, pumping lines and metering equipment within the proposed development." Permission was thereafter obtained from Branford by North Branford to discharge sanitary sewage into the CT Page 8436 Branford system. Thereafter, on April 10, 1989, Shoreline made a separate agreement with Branford to construct and install, at its own expense, a sewer line running along Route #1 in Branford, located therein as agreed, and in accordance with engineering details and specifications attached to that agreement.[3] As part of its agreement with Branford, Shoreline was also to turnover the ownership of the sewer line it constructed in Route #1 to Branford, which was done.
The sewer system of Shoreline that it constructed on its property in North Branford was done at is sole expense. As already noted it is not physically connected to any other sewer lines in District "A" or, for that matter, with any other sewer line in North Branford. It does physically connect with the sewer line Shoreline constructed in Route #1 directly from its property in North Branford. The total cost of this sewerage system to Shoreline, none of which was paid for by North Branford, was $445,000.00. North Branford meters the amount of sewage discharged from Shoreline's Evergreen Woods facility and Shoreline pays the Town the amount charged for such discharge.
Shoreline claims that 7-249 makes clear that a town may only recover through benefit assessments against properties and their owners "the cost of the sewer system serving the properties." There it argues that the applicable sentence of 7-249 reads "Revenue from the assessment of benefits shall be used solely for the acquisition or construction of the sewerage system providing such benefits or for the payment of principal of and interest on bonds or notes issued to finance such acquisition or construction." Here it points out that the Town has not incurred any cost for the sewer system serving Evergreen Woods, all of it having been paid by Shoreline. Moreover, Shoreline argues that the kinds of costs that a municipality may recover by a benefit assessment under 7-249 are set out where it is provided that "Such assessment may include a proportionate share of the cost of any part of the sewerage system, including the cost of preliminary studies and surveys, detailed working plans and specifications, acquiring necessary land or property or any interest therein, damage awards, construction costs, interest charges during construction, legal and other fees, or any other expense incidental to the completion of the work." Parenthetically, we can say here that there is no credible evidence upon which this court could find that the Town, under 7-249, and specifically the language just quoted, could make a cognizable claim that somewhere a portion of what the Town may have had to pay to Branford under its September 13, 1977 agreement, long before CT Page 8437 Shoreline was assessed as here, could be factored into the kinds of costs just set out to make for a benefit to Shoreline under 7-249
in levying the contested benefit assessment.
Shoreline again refers to 7-249 where it provides: "No assessment shall be made against any property in excess of the special benefit to accrue to such property. . . ." Its position here is that Shoreline has not received no benefit from the sewer system constructed by the Town and therefore cannot properly make an assessment under 7-249. Essentially, it claims: no benefit, no assessment. It also contends that its interpretation of 7-249 is supported by the case of Windham Heights Associates v. Town of Windham (1979). Anticipating that the Town's argument may invoke the view that its assessment is proper because the Town's capacity to discharge sewage into the Branford system is reduced by Shoreline's discharge into that system, Shoreline opposes this view. In doing so Shoreline asserts that 7-249 does not address an assessment that could be based on reduced capacity and that, having made its assessment under 7-249, it cannot now justify it in the nature of a connection charge under 7-255 or upon a basis other than
The Town, on the other hand, argues that Shoreline is incorrect in arguing that under 7-249 it can only validly assess benefits when the sewer is "serving" the property assessed as that is contrary to the plain language of 7-249. Rather, it contends that the law is that such an assessment is valid as long as the sewerage system provides a benefit to the property. Further, the Town argues that 7-249 does not limit assessments thereunder to the costs of sewerage systems "serving the properties," but assessments are appropriate where there is a benefit to the property, whether or not the properties abut the sewer system. That statute, the Town also maintains, permits an assessment to include costs of a system located outside a sewer district in which a property is located and for that last argument cites the following portion of 7-249:
 ". . . In assessing benefits against property in any district, the water pollution control authority may add to the cost of the part of the sewerage system located in the district a proportionate share of the cost of any part of the sewerage system located outside the district but deemed by the water pollution control authority to be necessary or desirable CT Page 8438 for the operation of the part of the system within the district. . . .
Going on, the Town maintains that Shoreline "clearly could have tied its project into the Section "A" sewerage system "but the alternative route selected "was merely for Shoreline's `convenience'". This begs the question of the total payment by Shoreline for the entire sewerage system serving Evergreen Woods. In any event, the Town says that the "effect" on the Section "A" system is the same in that it causes a reduction on that system's (Section "A") capacity to discharge sewage into the Branford system under its November 1977 agreement which permitted North Branford to discharge up to 665,000 gallons of sewage a day into that system. This ability of Shoreline, argues the Town, to have "access" to the Town's Section "A" sewage system which impacts on that system is a benefit to Shoreline's property which is direct, immediate and certain and it increases the value of Shoreline's property thus permitting a valid assessment of benefits under 7-249. Again, stressing its "access" claim, the Town says "As [Shoreline's] property clearly has access to the `Section A' system, and is, in fact, utilizing a portion of the `Section A' flow capacity, the property benefits from the Section A sewerage system." The presumed validity of the [Town's] assessment of benefits, therefore, the Town argues, could only be rebutted by evidence that the assessment exceeds the difference in market value of the property with and without access to sewers "and Shoreline has not presented any such evidence according to the Town."
Initially, in our analysis, there is the matter of the presumption that the assessment is one of "regularity, validity and correctness." It is true, as the Town claims, that Shoreline did not literally put in evidence that the particular dollar value increase accruing to its property was exceeded by the assessment. See, e.g., Anders v. Litchfield, supra, 28.
The burden of proving that the special benefit assessment made here was invalid because it exceeded the particular dollar benefit accruing to Shoreline's property was on Shoreline and it had that burden, until by the necessary quantum of proof required, the validity of the fact of the "regularity, validity and correctness" of the special assessment had been rebutted. It did so rebut in this case. "No general rule can, . . . be laid down as to the effect of a particular presumption in the actual trial of a case, for this depends upon the purpose it is designed to serve." O'Dea v. Amodeo, 118 Conn. 58, 60 (1934). The presumption applicable here, CT Page 8439 one based on public policy, tends to serve to bring out the real issue here under 7-249, that of the requisite special benefit to Shoreline's property.
There was no benefit accruing to Shoreline under 7-249
because, first, the Town did not incur any cost to construct or acquire a sewerage system in the Evergreen Woods complex on Shoreline's property in North Branford. And, under 7-249 "revenue from the assessment of benefits shall be used solely for the acquisition or construction of the sewage system providing such benefits or for the payment of principal of and interest on bonds or notes insured to finance such acquisition on construction. . . ." (underlining added). Shoreline has paid the entire costs for their sewerage system. The Town has not paid any of the "cost" as that term is used in 7-249.
In addition, we cannot accept the Town's position that the "other relevant factors" language of 7-249 is a proper consideration for this assessment. The Town claims that it is because the plain language of the statute clearly supports the position that a property need not directly "abut" a sewage system in order to be subjected to a benefit by a municipality. The Town contends that this makes it a proper consideration because this assessment results from the benefit accruing to the property from the Town's sewage system which was described as the `Section A' system at trial."[4] We cannot accept this argument in the facts of this case. A "relevant factor," the Town says is the reduced discharge capacity into the Branford system that will result to the Town because of Shoreline's discharge into that system. It seems the Town, aware that it cannot point to any expenditures on its part at all for the construction of the Shoreline system in North Branford, also claims that the fact Shoreline has "access" to the Branford system is a benefit to that property (7-249).
On examining the statutory scheme of 7-249, it has not been demonstrated to this court that either the "reduced capacity" or the "access" arguments can, in the fact pattern of this case, operate as a "benefit" to Shoreline's property. Shoreline who has the burden of rebutting the presumption of validity of the assessment has done so here also. The "access" aspect may much more properly be perceived as something in the nature of a connection charge or levy and that requires that the procedure under 7-255, not 7-249, be followed. Here clearly the assessment is under 7-249. As far as the "reduced capacity" aspect goes, 7-249
does not, as Shoreline argues, address an assessment based on CT Page 8440 that concept. In any event there was no evidence of how much effluent gallonage per day is now being generated by Evergreen Woods which is not at all up to planned occupancy at which point some 65,000 gallons per day is projected. Branford and North Branford have agreed that Branford will accept 665,000 effluent gallonage per day. There is also no evidence of how much of the 665,000 daily permissible gallonage is now being used or how much of it is projected to be used when there has been full development of the property in North Branford served by the Branford system. Moreover, there is no evidence that the "reduced capacity" matter was ever asserted by the Town in the nature of any sort of condition in permitting Shoreline to construct its sewage system.
Moreover, Shoreline's sewage discharge into the Branford system is metered by the Town and it pays money to the Town depending upon the amount of the discharge from its Evergreen Woods property in North Branford into the Branford system.
While the facts are not identical, the dispositive principle in Windham Heights Associates v. Windham, 179 Conn. 229 (1979), supports Shoreline's position in this case. In Windham Heights the plaintiff owned property on Route 6 which they improved with apartment units. After the completion of a sewer line along Route in 1968 by the Town of Windham, the sewer commission of that town constructed another sewer line on Route #14 which was completed in 1972. In 1973 the Windham sewer commission adopted a formula for assessing benefits based upon the aggregate net cost of these two sewer lines although they were independently authorized, financial and constructed. The properties on Route #6 did not benefit from the Route #14 sewer line and the properties on Route did not benefit from the Route #6 line. The issue presented was whether a municipal sewer commission may properly combine the costs of two separate sewer systems located in different sections of the town and access the two groups of persons benefited by those two sewers proportionately. In holding that it could not, the Supreme Court pointed out that the benefits assessed must be special to the individual property owner as distinguished from the benefits accruing to the general public as the result of the improvement. In holding the assessment in Windham Heights invalid as a matter of law as the Route #14 sewer line did not enhance the plaintiff's property or otherwise benefit it, the court noted that it was undisputed that the assessment was based on recouping the cost of both the Route #14 and the Route #6 sewer lines "rather than an actual benefit to property." Windham Heights Associates v. Windham, supra, 232. (underlining added). For benefits to be CT Page 8441 appropriately assessed, they "must be direct, immediate, appreciable and certain, not contingent, remote and uncertain." Appeal of Cohen, 117 Conn. 75, 84 (1933) (underlining added).
As already pointed out, the basis of making and justifying such assessments is that the property is assumed to be benefited by the improvement to the extent of the assessment, and, so the special assessment (as that term has been explicated), is imposed and collected as an equivalent for that benefit and to pay for the improvement which caused that benefit. See also Connecticut Ry. Ltg. Co. v. Waterbury, 127 Conn. 617, 619 (1941); Bridgeport v. New York, N.H.R.R. Co., 36 Conn. 255, 263 (1869). That did not happen in Windham Heights and it did not here. Or, to state it another way: the principle has the thrust that the benefits conferred are full compensation for the expense imposed on the property owner and so he suffers no dollar loss. Whitmore v. Hartford, 96 Conn. 511,519 (1921). The money the owner must part with because of the assessment is presumably the measure of the benefits from the improvement. That was not the case in Windham Heights and it cannot be so here. The proposition that the assessment operates to recoup the permissible costs under 7-249 of the sewer lines assessed for was found not to be permissible in Windham Heights and it cannot be so found here.
In summary, no sewer line constructed by the Town of North Branford benefited Shoreline's property in any way. The challenged assessment levied Shoreline's property in North Branford, made under 7-249, is illegal and invalid.
The court finds the issues for the plaintiff Shoreline on all three counts of the amended complaint filed June 2, 1992. Accordingly, Shoreline's appeal is sustained and judgment may enter in its favor on all three of said counts.
Arthur H. Healey, State Trial Referee