Hoyt and others *v.* Smith and another.

In this opinion, the other judges concurred, except HIN-MAN, J., who was disqualified.

Judgment reversed.

———•◄◄●►•———

HOYT AND OTHERS *vs.* SMITH AND ANOTHER.

In an agreement between the plaintiffs and defendant, the latter promised, in consideration of advancements of money made to him, to sail for California on a particular day, to procure a sufficient quantity of provisions to last two years, to forward all necessary tools, and to commence digging for gold, as soon as possible after his arrival there. Held, that it was the meaning of said agreement, that the defendant should dig for gold in California, for two years.

On a bill in equity against A and B, alleging that A had neglected to fulfill said agreement and had refused to account for his proceedings under such agreement; that he had procured large sums of money in California, either by digging gold or by the use of the funds furnished by the plaintiffs; that, to conceal the same, he fraudulently combined with B, to whom he transmitted large quantities of gold, under such agreement,—praying for a discovery of the amount of gold, and other property obtained by A, in California, under such agreement, the amount transmitted to B, and the amount brought home by him; it was held, that the plaintiff was entitled to a discovery of all the defendant's proceedings, during the two years when he ought to have been employed under said agreement.

Where B disclosed that he went to California in 1849, in pursuance of said agreement; that he abandoned the same about the first of December, in the same year; that, according to the construction given to such agreement by his counsel and by himself, he neither transmitted to any one, nor brought home any gold procured under said agreement, although he did not deny that he obtained large sums of money in some other way, during said two years after he left gold-digging, and refused to disclose what gold, or other property he obtained during said time, otherwise than by gold-digging, or under such agreement; it was held, that he was bound to make further discovery.

THIS was a bill in equity, brought by Stephen B. Provost

and others, against William L. Smith and William New-man for a discovery and relief.

The bill alleged that said Smith, on the twenty-second day of January, 1840, executed and delivered to the plaintiffs and to said Newman, the following agreement in writing:

" This is to certify that I have received from Silas Scofield, Jr., and George Scofield, five hundred dollars, from Stephen B. Provost, J. D. Warren, Wm. Newman, John R. Scofield, and James H. Hoyt, one hundred dollars each, making in all, one thousand dollars. In consideration of the foregoing sum of one thousand dollars, I will, on or about the first of February next, sail for California, by way of Chagres and Panama, in a steamship, and I will forward to California a sufficient quantity of provisions to last two years, and will procure and forward to California all necessary tools for dig-ging gold, and will commence digging as soon as possible after my arrival there; and forward, every opportunity, to the foregoing named persons, any amount I may have on hand, they to receive one-fourth part of the amount that I can collect while there, and the remaining three-fourths to be kept by them for my use, and subject to my order; and for the further consideration of the one thousand dollars received, I will procure a policy upon my life, for the sum of two thousand dollars, in favor of James H. Hoyt, and in case of my death before my return home, he is hereby directed and authorized by me to collect the money for the policy, and pay over to the foregoing named persons, one thousand dollars, in proportion to the sums received of each, and the remaining part to be paid over to Wm. Newman, for the use and benefit of my children; and, in case the policy of in-surance is kept good for more than one year, I will pay one-half the expense, and the foregoing named persons paying the other half, each in proportion to the sums entitled in the policy, in case of my death.

(Signed,)                WM. L. SMITH."

That, in pursuance of the provisions of said agreement,

the plaintiffs and said Newman delivered to said Smith, said sum of one thousand dollars. On the 29th day of January, 1849, they delivered to said Smith the further sum of two hundred dollars for the same purposes; that said Smith, by said agreement, promised the plaintiffs and said Newman, that he would, on or about the first day of February, go to California, and procure and convey thither, a sufficient quantity of provisions to maintain him, in California, for two years from said time, and would procure and convey to California all necessary tools for digging and procuring gold in the gold mines and deposits in California, and that he would devote his time and services, during two years, to the digging of gold, and would forward, by every opportunity, to the plaintiffs and said Newman, all the gold which he should procure and collect while there, to be disposed of as specified in said agreement; that said Smith went to California, according to the terms of said agreement, and with him took the necessary provisions, and tools, as specified in said agreement, commenced digging gold, and forwarded to the plaintiffs, gold, of the value of twelve hundred dollars; but, soon after the arrival of said Smith in California, he conceived the design of depriving the plaintiffs of the benefit of his said agreement; that he and said Newman fraudulently conspired and combined together to carry said design into effect; that Smith remained, during said two years, in California, but wholly neglected and refused to fulfill his agreement aforesaid, either by neglecting and refusing to devote his time and services to digging gold, or by neglecting and refusing to forward to the plaintiffs and to said Newman, for the benefit of the plaintiffs and defendants, the gold procured by him in California, as specified in said agreement; that said Smith, at all times, wholly refused to give to the plaintiffs, any account of his proceedings in California, though often requested so to do; that they had reason to believe, and therefore averred, that said Smith procured a large amount of gold in California during said two years, to wit:

twenty thousand dollars, and that he either procured said gold or might have procured it, by digging gold, and that he procured said gold by the aid of the money, advanced under the provisions of said agreement.  The bill further alleged that Smith, and Newman, who was the brother-in-law of said Smith, fraudulently combined together to conceal the gold, so obtained from the plaintiffs, and that Smith transmitted to Newman, the whole or a large part of the gold procured by him, which the latter received, apparently for his own use, but, in reality, for the benefit of said Newman and Smith.

The plaintiffs prayed the court to order Smith to render an account of all the gold and other property, which he obtained, during said term of two years in California; and prayed that said Smith be required to disclose, under oath, what amount of gold or other property he obtained during said two years in California, and particularly to state when he arrived in California; when and where he commenced digging for gold; how much gold he obtained at such place of digging; when, if at all, during said two years, he left off digging at that place and commenced digging at some other place; what such other place was, and how much gold he procured there; at what other places, if any, he dug for gold; and what he procured at each; also, to state in what manner he employed his time, during said two years, and how much gold or money, or other property, he obtained, during said two years; also to state whether while in California, he transmitted gold, money, drafts, or other property to said Newman, and if so, when, how much, and in what manner; also to state what amount of gold, money, drafts, or other property he brought with him from California; and in what it consisted, and how much of it was obtained, during said two years: and if he had transmitted or delivered to said Newman or to some other person for him, gold, money, drafts, or other property for his own benefit, or for the benefit of himself and said Newman; and if so, how much, and in what manner, and in what situation the same then was.

That said Newman be required to answer and state what gold, money, drafts or other property was, at any time, transmitted to him or to any other person for him, by the said Smith while in California, and what he had done with the same; also what gold, drafts, money or other property, the said Smith had, since his return from California, delivered to him or to any other person for him; what arrangement or understanding existed between said Smith and him, as to the gold and other articles so transmitted or delivered, as to what he should do with the same, or in what manner he was to account for the same to said Smith; what said Newman had done with any gold, money, or other property so received; and what was the state of the account between and said Smith; also to state what correspondence passed between him and said Smith, while said Smith was in California, and produce all letters which he received from said Smith, or state their contents, if said letters had been lost or destroyed; also to state particularly all other matters relating to gold or other property, received by him from said Smith, since he left for California, as fully as if particularly interrogated.

The plaintiffs further prayed, that the defendants might be required to render a full account of all moneys received by them, or either of them, for the benefit of the plaintiffs, or for the mutual benefit of the plaintiffs and defendants, or either of them, and to pay to the plaintiffs such moneys, as might be due to them or either of them.

To this bill the defendants answered severally. Said Smith denied that he made any other promise to the plaintiffs or any of them, than that set forth in their bill, and averred that he went to California, taking with him provisions and everything else said writings required him to take, and commenced digging gold, and sent to the plaintiffs gold, as in said petition alleged; that he continued for a long time, *viz.*, from ———— to ————, to search and dig for gold in

California, but notwithstanding his utmost exertions, he procured but a very small quantity, and not enough to pay for his expenses while engaged in so searching and digging; that he found all further efforts and exertion for the procuring of gold in California by digging therefor, unavailing and hopeless; that, with the knowledge and approbation of most of the plaintiffs, he discontinued such digging, being convinced that further search and digging for gold would have been attended with constant and ruinous loss, unproductive of any favorable results, and would have so impoverished him, as to render it impossible for him to have refunded to the plaintiffs the money he had so received from them, or any part thereof, and that he procured, by his exertions and labor, no gold to forward to the plaintiffs and said Newman, and could not procure any for that purpose, but nevertheless he did return and forward to the plaintiffs, *viz.*, on or about the —— day of ———, the moneys he had so received from them, and interest thereon, from the time he so received the same; that in all respects, and with entire fidelity, he discharged his duties to the plaintiffs, under said contract, to the utmost of his power; that he always had been and was ready to render to the plaintiffs his just account in the premises, and that he had, at all times, when in any way requested, given them full and true information in relation to the matters aforesaid, and was willing and ready to make full disclosure under oath, of all matters relating to the premises, and to answer all enquiries, properly and legally pertinent to the same.

Said Newman denied that he had ever received anything from said Smith, for which he could account to the plaintiffs, or anything in which the plaintiffs had any interest direct or indirect; yet averred that he was ready and willing to render to the plaintiffs any such account, if there be any such account to be rendered, which he denies, and he was ready and willing to disclose, on oath, any and all matters, and to answer

all enquiries properly and legally pertinent to the same. Both defendants utterly denied all the allegations of said bill, charging them with fraudulent combination, or with fraud, or with concealment, or omission of any kind, to discharge any duty in the premises.

At the term of the court holden in February, 1853, a committee having been appointed, to take the discovery of the defendants, reported that the defendants made discovery substantially as follows.

Said Smith, in his discovery, after stating that he was willing to disclose as to the amount of gold or other property he obtained by digging in California, or any other operation under the contract, but not as to anything he obtained in any other way, disclosed, as follows:

" I arrived in California, the first day of April, 1849. I commenced digging on the south fork of the American river. I cannot tell how much gold I obtained at that place of digging,—I kept no account of it,—about enough to buy my provisions,—I left off digging at that place, about the first of May in the same year. We started from there and went to the Middle fork of the same river."

He then proceeded in detail, to state his proceedings in gold digging in various parts of California, until his return to Sacramento, which were unsuccessful. Said discovery then proceeded as follows:

" This must have been about the first of December, in 1849, and was the last I ever did under the contract. I then went to work for a man, building a house, in Sacramento." Said Smith here declines to state, under the advice of his counsel, what other business he followed after he left off gold digging. He also declines stating what gold, money, or other property, he obtained after that period, by following other business.

" I never sent to William Newman of Stamford, nor to anybody else, any gold, money, drafts, or other property obtained by digging, under the contract."

Said defendant here declines to answer, by advice of counsel, whether he transmitted to Newman, any gold, money, drafts, or other property, obtained in any other way than by digging, or under the contract, or when, or how much, or in what manner he so transmitted any such gold, money, drafts, or other property, if he ever transmitted any.

" I brought home no gold, money, drafts, or other property, from California obtained by digging, or under the contract, according to the construction given to that contract by myself and my counsel."

Said defendant declines, by advice of counsel, to answer what amount of gold, money, or other property, he brought home with him, which was obtained in any other way than by digging, or under the contract.

" I have never transmitted to or delivered to said Newman, or to any other person for him, any gold, money, drafts, or other property, for my own benefit or for the benefit of myself and said Newman, obtained by digging or under the contract, and I decline to answer, as to any property obtained in any other way, by advice of my counsel. And as to so much of the interrogatory as is embraced in these words, " and if so, how much and in what manner, and in what situation the same now is ? " if any was transmitted or brought by me, I also decline to answer, by advice of counsel, except to state as I have already stated, that none was brought or transmitted, obtained by me, by digging, or under the contract."

Reservations, similar to those made by said Smith, were made in the discovery of said Newman.

The case embracing the foregoing facts was reserved for the advice of this court.

*Dutton* and *Ferris* and *Minor*, for the plaintiffs, contended,

1. That the defendant, Smith, was, by the terms of the contract, to spend two years in California, and devote his ser-

vices to the interest of the parties, which, it is admitted, has not been done; and he gave no notice of having abandoned the contract. The plaintiffs had a right to give their assent to the new business, as soon as they knew it was engaged in, and then share in the profits.

2. The defendants are bound to make the disclosure required by the plaintiffs.

If the claims of the plaintiffs, as to damages, are correct, this follows of course, and in any event.

The plaintiffs have a right to be heard on the question, whether what was done by the defendant was not done under the contract, as a *matter of fact.* The court is to decide this from what was actually done. We are not bound to take the defendant's view of it.

The whole should be known, to enable the court to determine what is the rule of damages. The court would have a right to say, that under the circumstances, as disclosed, the defendant, if he left off digging for a time, was bound to resume it with such means as he had acquired. It is unprecedented for the defendant to admit a liability, and then refuse to say anything more on the subject.

*Hawley,* for the defendants, contended,

1. That the answers given, are all the plaintiffs are entitled to call for. They are full and explicit, as to gold got by digging, and the plaintiffs are interested in nothing else. The contract stipulates for, and contemplates nothing else, and Smith is under no liability to account for anything obtained in any other business.

This would be so, even had all been partners, but there was no partnership; there was to be no sharing of profit and loss, no sharing of responsibility; the gross amount of gold was to be divided, without reference to expenses incurred, or losses sustained, and in case of Smith's death, the whole, which had been furnished to him, was to be reimbursed to

those who furnished it, out of the proceeds of the policy, without regard to Smith's labor, expenses, or losses.

2. There was no time fixed for Smith's continuance in the business of digging, and even had there been, he discloses a full justification for leaving it. Sto. Part., 290. But if otherwise, the remedy against him would be for damages for violation of his contract. 1 Sw. Dig., 337, 339, 340. *Turner* v. *Bissell*, 14 Pick., 192. 14 Pick., 285, 289. Sto. Part., 269, 274, 277, 290.

3. The defendants deny everything that could give the plaintiffs a right to further answers. Coop. Eq., 197, 315–317. 1 Mad. Ch., 163. Mitf., 251–253. 2 Fonb. Eq., b. 6, ch. 3, § 2 a,· citing 3 Bro. C. C., 489. 1 Cox R., 197. *Jacobs* v. *Goodman*, Ham. Dig., 421. 11 Ves., 291, 293.

HINMAN, J. We think the defendants are bound to answer the interrogatories which are propounded to them. They do not deny the right of the plaintiffs to call for a full disclosure, in respect to all gold obtained by Smith, by digging, during the time he was in California, at work under the contract; but they claim that the contract did not bind him to dig for gold during any particular time, and that, if it did, they have no right to compel him to account for gold, obtained in any other way than by digging; that if he disregarded his contract, he is only liable in damages, in an action at law, and not to account for any money he might have obtained in any way not contemplated in the contract.

We think, however, that the contract did bind him to dig for gold for the period of two years at least. It is true, that the contract does not say, in express terms, that he would dig for gold for two years, but it shows that a large sum of money was advanced to him, to enable him to procure the necessary tools and provisions, and, in consideration of that advancement, he agrees to procure a sufficient quantity of provisions to last two years, and also to forward all necessary tools for digging gold, and to commence digging, as soon as

possible after his arrival there. From these circumstances, we have no doubt that all parties contemplated that he was to be engaged in this business for two years, at least. Now, although it may be true, that the plaintiffs may have no right to call for an account of any gold, or other property, obtained in any other way than by digging, yet they have a right to know how much gold, and at what places, he obtained such gold as he did obtain in that way, and we do not think that they are bound to take his simple statement of what he considers the amount of gold that he obtained in that way. They have a right to a disclosure of all the circumstances that may enable a court to determine whether he procured his gold by digging, or in some other way. It is very possible that the court, on a full disclosure of all his conduct relating to the procurement of gold, might differ from him in respect to the manner in which he procured it, and might think it was procured by digging, and for the purpose of testing the correctness of his opinion, we think the plaintiffs are entitled to know what he was about, during the two years that he ought to have been engaged under the contract. The bill states, that he in some way obtained and sent home to the defendant Newman, large sums of money, and it charges that it was either procured by digging, or by the use of the funds of his associates, the plaintiffs, which were furnished him, for the purpose of procuring tools and provisions. If this was so, he ought to account for it; and a mere simple denial of the fact, is not, we think, a satisfactory answer to the call made upon him in the bill. He says, in the partial disclosure which he makes, "that he brought home no gold, money, drafts, or other property, from California, obtained by digging, or under the contract, according to the construction given to that contract by himself and his counsel;" and, in another place, he says "he never sent to anybody, any gold, &c., obtained by digging, under the contract."

Now, by this answer, he constitutes himself the sole judge

of what he obtained by digging, or under the contract, and attempts effectually to prevent the plaintiffs from investigating the matter at all. He does not deny that in some way he obtained large sums of money, which he either sent home to Newman, or brought home himself. His conduct in refusing to answer what sums, and how they were obtained, raises a strong suspicion, to say the least, that they were obtained in some way, which would make him accountable to the plaintiffs for a share of them. Suppose he abandoned digging for gold himself, but employed others to dig with the funds furnished him by the plaintiffs, would he not be accountable to the plaintiffs, for a share of the avails? Or, suppose he invested the plaintiffs' money in some other business, and thus obtained large profits, might he not be accountable for money thus obtained? We think he has no right to constitute himself, or his counsel, a judge of his own accountability, and then refuse to answer questions, because he thinks they relate to matters into which the plaintiffs have no right to enquire.

He ought to relate all the facts, as fully as if he were under examination as a witness, and the court will determine, from them, whether he is accountable or not.

The last two questions reserved for the advice of the court of errors, we have thought it best, upon the whole, not to answer, until the facts are all before the court. They may never require to be answered at all, and they have not been very fully argued by counsel. When the facts are all brought out, the questions will be cleared of some embarrassments with which they are now necessarily attended.

In this opinion, the other judges concurred.