# J. YOUNG SCAMMON

### *v.*

# THE CITY OF CHICAGO.

1. SPECIAL ASSESSMENTS — *of the collector's warrant — manner of signing the same.* The use of the word "countersigned," to the left of the signature of the comptroller, affixed to the collector's warrant issued on a judgment upon a special assessment, does not vitiate the signature of the comptroller, which,

in such case, is, in fact, " affixed," and that is all the law requires. The prefix does not remove his name from the warrant nor render it any the less his signature. *

2. Same — *for what purposes a special assessment may be made in the city of Chicago.* The act of 1865, amendatory of the charter of the city of Chicago, authorizes special assessments for repairing the streets, and it is for the city council to determine in what mode the reparations shall be made.

3. So, if they decide that a street which has once been graveled shall be repaired by re-graveling, that is within the power conferred by that act.

4. Same — *requisites of the assessment roll — of the mode of apportioning benefits.* It is not necessary that the assessment roll, which is returned to the common council for the action of that body, should show a valuation of the respective pieces of property assessed. The manner in which the "benefits" are to be adjusted in such cases is left to the discretion of the commissioners, to be exercised by them, subject to the supervision of the courts upon any charge of fraud, corruption or oppression, or of departure from the rule of equality prescribed by the Constitution and the legislature.

5. Same — *public grounds must bear their proper share of the burden.* Real estate owned by a municipal corporation is not exempted from its proper share of the burden of constructing public improvements. So, where the city owns a public park which is bounded by streets for the improvement of which an assessment is being made, the city must contribute to the necessary expense in common with the owners of private property interested in the same improvements. The rule of equality of burdens in such cases, as laid down in the *Larned* case, requires all property to contribute to the cost of the improvement, in proportion to the benefit received therefrom.

Appeal from the Superior Court of Chicago; the Hon. John M. Wilson, Chief Justice, presiding.

The opinion of the court contains a sufficient statement of the case.

Mr. Thomas Hoyne, for the appellant.

Mr. S. A. Irvin, counsel to the corporation, for the appellee.

Mr. Justice Lawrence delivered the opinion of the Court:

On the 15th of May, 1865, the common council of the city of Chicago passed an ordinance directing a certain part of Michigan avenue to be re-graveled, and that the real estate deemed

---

* See, also, *Gurnee* v. *The City of Chicago,* 40 Ill.,165, and *Skinner* v. *The City of Chicago, ante,* p. 52.

benefited thereby, be assessed to pay the expense of the work, estimated at $16,200.00. An assessment roll was duly made and returned by the commissioners of the board of public works, showing the amount assessed by them against the respective pieces of property deemed to be benefited, and, a part of the owners having failed to pay, on the 5th of February, 1866, the city collector filed his report in the Superior Court, asking judgment against the delinquent lots for the amounts respectively assessed against them. Exceptions were filed to the report, which were overruled, and judgment was pronounced against the lots, from which judgment this appeal was prosecuted. We will consider the objections in the order they are presented by the argument of counsel for appellant.

It is first insisted, that the warrant issued to the city collector was not signed by the comptroller. The charter requires that warrants of this character shall be signed by the mayor, comptroller and city clerk. The signatures of all these officers were affixed to the warrant in question, but at the left of the comptroller's name was printed the word " countersigned." The use of this term did not vitiate the signature of the comptroller, which was in fact " affixed," and this was all that the law required. The mayor being the principal officer, the comptroller may have considered himself as " countersigning," in reference to the signature of his official superior, but the prefix did not remove his name from the warrant nor render it any the less his signature. The objection rests upon a verbal subtlety of the most shadowy character, and is without merit.

It is next insisted that the charter confers no authority to make an assessment on private property for the purpose of *regraveling*.a street. It is admitted that this may be done for graveling, but it is said not for re-graveling. Whether a distinction of this kind could have been taken under the charter of 1863 it is not necessary to inquire. It is clear that it cannot, under the amendments of 1865. By the first section of the act of 1865 these assessments are authorized, not only for graveling, but for repairing streets. It is for the city council to determine in what mode the reparations shall be made, and

if they decide that a street, which has once been graveled, should be repaired by re-graveling, they are simply exercising a power expressly granted to them by the charter. That re-graveling a street, which has once been graveled, but has been injured by wear and the elements, is repairing it, in the strictest sense of that word, would seem to be a question about which there could hardly be a difference of opinion.

It is next objected that the assessment roll returned to the common council by the commissioners, and confirmed by that body, did not show a valuation of the respective pieces of property assessed. The amendment to the charter of 1865, already referred to, and which was intended to conform the action of the city in reference to these improvements to the decision of this court at a former term, in the case of the *City of Chicago* v. *Larned*, requires the assessment to be made upon the real estate benefited, in proportion, as nearly as may be, to the benefit resulting thereto. But the mode of arriving at their determination is left wholly to the discretion of the commissioners. Whether, before forming a conclusion, it is important for them first to value all the property thought to be benefited by the proposed improvement is a question left to their discretion. Whether, in this case, they did or did not make such valuation does not appear. They did not report such valuation, nor did the law require them to do it. In prescribing the mode by which the improvements of a great and rapidly growing town like Chicago, shall be carried forward, the legislature can only lay down general principles and rules for the protection of individuals, and must necessarily intrust a large discretion to those municipal officers whom the citizens see proper to clothe with power. It has not thought it necessary to prescribe the precise mode by which the commissioners of the board of public works shall adjust this matter of "benefits," but inasmuch as each case must depend upon circumstances peculiar to itself, and requiring a personal examination or personal knowledge, and the exercise of a sound discretion, on the part of these officers, it has contented itself with laying down the general rule, that the burden shall be in all cases apportioned to the benefits. In

the application of this rule it is unavoidable that a large trust should be confided to the public officers, to be exercised by them, subject to the supervision of the courts upon any charge of fraud, corruption or oppression, or of departure from the rule of equality prescribed by the Constitution and the legislature. The objection of a want of valuation on the assessment roll is not well taken.

We come now, however, to an objection, which, under the principles just announced, is fatal to this assessment. It appears from the record that there are public grounds on the east side of the street, and a public square, known as Dearborn Park, on the west side, and that these were wholly exempted from the assessment. The entire burden was imposed upon the private property owners on one side of the street, except the cost of the intersections. We are wholly unable to see how this can be reconciled with the principle prescribed by the legislature, and requiring the assessment to be laid upon all the property benefited. It is insisted by the counsel for the city that this public property is not benefited because it is public, and cannot be sold or diverted to any other than its present uses. But even as a park or public pleasure ground, it is clearly benefited by having the streets bounding it kept in good condition. If it were the pleasure ground of a private corporation, held solely for that purpose, and accessible only to its members, and incapable of alienation, no one would deny that it should be assessed for an improvement of this character in common with the property of individuals. We do not see that the case is different because instead of being the property of a private it belongs to a municipal corporation, in trust for all its citizens. If they own these parks, and if it is desirable that they should be bordered by clean and well paved streets, why should not they contribute to the necessary expense in common with the owners of private property interested in the same improvements. That the legislature contemplated no exemption of this character is evident from the fact that the first section of the act of 1865, already quoted, requires that the expense of an improvement of this kind, so far as it is

incurred at the intersection of streets and alleys, shall be paid out of the general fund of the city, and not raised by special assessment. Yet why should not the expense at the intersections be as properly chargeable upon the adjacent property holders as the entire cost of the street where it is bordered on one side by a park. This provision of the charter evidently rests upon the idea that the city itself is the owner of the adjacent property at the intersections, and should therefore contribute its share of the expense, and the same principle applies with the same force to the public parks. In the case of *Higgins* v. *City of Chicago*, 18 Ill. 276, this court said that whether the property of the city should be included in an assessment of this kind was a mere question of public policy, but this was said before the amendment to the charter of 1865, and without reference to the constitutional question just considered in *City of Chicago* v. *Larned*, above quoted. In the case in 18 Ill. the public square had in fact been assessed, and the court say : " No reason is apparent why the public square may not receive a due share of the benefit with any other realty on the same street. The corporation of the city or county may, if not specially exempted, justly pay a part of the assessments proportionate to the benefits conferred by the improvements. Such mode of apportioning the burden is very just and reasonable, for under it many tax payers will contribute a share for the benefits bestowed on their property in common who otherwise would pay nothing and yet enjoy the enhanced benefits resulting from the improvement." This is in harmony with the views we have taken of the case before us. For the failure to assess the public grounds the judgment must be reversed and the cause remanded.

*Judgment reversed.*