(109 App. Div. 748)

PEOPLE ex rel. CONNELLY v. REIS, City Assessor, et al.

(Supreme Court, Appellate Division, Third Department. November 15, 1905.)

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—CERTIORARI TO REVIEW—AUTHORITY OF COURT.

Where, on certiorari to review a special assessment, it appears from the record that as a matter of fact the assessment of relator's property is unequal as compared with the assessment of other similar property similarly situated, and is unjust, the court has authority, under the ex provisions of Code Civ. Proc. § 2140, to correct the assessment, though the general principle on which it was made is not an erroneous one.

2. SAME—UNEQUAL ASSESSMENTS.

The lots of an owner were assessed at the rate of 7 per cent. and 9 per cent., respectively, of their valuation, for the construction of a sewer. Other lots were assessed at the rate of from 1½ per cent. to 2 per cent. of their valuation. All the lots were assessed at a fixed rate per front foot. The lots of the owner were used and suitable for residential purposees only. The other lots were business lots, and each of them, however small its frontage, was in present need of sewers, and derived a present benefit therefrom. Each front foot of the owner's residence was not in like need of a sewer, and was not to the same degree benefited thereby. Held, that the assessments levied against the lots of the owner were unjust and should be annulled; Laws 1896, p. 909, c. 747, § 147, requiring the assessment of each parcel in proportion to the benefits.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1120.]

3. SAME—PROPERTY SUBJECT TO ASSESSMENT—CITY PROPERTY.

Property owned by a city is subject to a special assessment for the construction of a sewer, and omitting the same from the assessment therefor is prima facie error.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1036, 1037.]

4. SAME—ASSESSMENT DISTRICT—PROPERTY ASSESSABLE.

Where the assessor has as expressly required by Laws 1896, p. 909. c. 747, § 147, determined the district within which the property benefited by a local improvement is located, all the property in the district must be considered as actually benefited, and therefore assessable for the improvement.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1108, 1122.]

Certiorari by the people, on the relation of Henry C. Connelly, against Michael A. Reis, as assessor of the city of Kingston and others, to review a special assessment of relator's property for the construction of sewers. Assessment annulled.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Arthur C. Connelly, for relator.

Augustus H. Van Buren and Howard Chipp, for respondents.

PARKER, P. J. This is a common-law certiorari to review the proceedings of the assessor and the common council of the city of Kingston in the assessment of a special tax to defray the expenses of constructing a system of sewers in a portion of such city, pursuant to section 147 of its charter, viz., chapter 747, p. 909, of the Laws of 1896. The relator claims that the special assessment is unjust and inequitable; that each parcel is not assessed, as required by said section 147, in proportion to the benefit which has been derived from said improvement, but that it has been made up upon a theory of "foot-front" assessments that has resulted in disregarding the actual value, location, and conditions of the properties assessed, and in ignoring the benefits accruing to each from the improvement mentioned; also for the further reason that certain parcels of land located within the district determined by the assessor to be specially benefited by the improvements are omitted from the assessment, thereby making the assessment against the relator's property larger and more burdensome. The return of the assessor, and others to whom the writ is directed, denies that the relator's assessment is unjust and inequitable, and specifically avers that in making the assessments and fixing the rate per front foot, whenever any lot or lots were so assessed, all the matters and considerations which relator complains were omitted, were in fact taken into account by him, and the question as to the amount of benefit conferred upon each lot by said improvement was so considered and ascertained. Of course, the correctness of any fact claimed by either party must be ascertained by the facts admitted or averred in the return.

It is required by the statute under which this tax is levied, viz., section 147, that it shall be made upon a just and equitable assessment against the owners or occupants of the lands deemed to be benefited, assessing each parcel in proportion to the benefit which has been derived from said improvement. And the relator insists that, because it has been levied upon a foot-front" basis, it must necessarily be unjust and invalid; and he cites the Klock Case, 30 App. Div. 40, 51 N. Y. Supp. 897, to sustain that claim. The assessor denies that it was made on such a basis only. We need not now determine either of those questions, because upon a certiorari to review the action of the assessing officer, if it appears from the record before us that as a matter of fact the assessment of the relator's property is unequal as compared with the assessment of other similar property similarly situated, and is unjust, this court is at liberty to correct such assessment, even though the rule or general principle upon which the assessment was made is not an illegal or erroneous one. Code Civ. Proc. § 2140. We must therefore inquire whether from the whole record before us it appears that the relator's property is or is not assessed fairly and justly in comparison with the

assessment of the other properties against which the tax in question is levied; and, if we conclude that the facts therein appearing do not sustain the judgment of the assessor in that regard, we may annul the assessment which he has so made.

In the record before us it appears that most of the property on Broadway (which is one of the principal business streets of said city) situated in the vicinity of the city hall, and nearly a mile distant from the property of the relator, is assessed at the rate of $1.90 per front foot, and most of the other improved property on said street northerly from the city hall and up to within a third of a mile from the relator's property is also assessed at the same rate. The relator's property, which consists of a couple of large and desirable residential places, five blocks west from Broadway, is likewise assessed at the same rate per front foot, as is also much other property scattered throughout the said two wards of the city. Upon each of the relator's said lots is located but a single residence and a barn; and each lot is evidently kept and used for residential purposes only. There does not appear to be any immediate demand for any part of either of said lots for more residences or further building thereon, nor is it manifest that either will ever become available for business purposes or manufacturing uses. On the other hand, the Broadway properties, which are assessed at the same rate per foot as is relator's, have already become available for the best business uses, and consist of stores, factories, hotels, etc., in the very center of commercial activity, and each parcel thereof, no matter how small its frontage, is in present need of the sewers and derives a present benefit therefrom. Evidently each front foot of the relator's residence is not in like need of a sewer, and to the same degree is not benefited thereby as is each front foot of such stores, factories, and hotels. A sewer in one street, with which the buildings on the relator's premises could be connected, would, at least under present conditions, serve the whole of each lot; and, so long as each lot is kept as a single residence, no need of a further sewer would ever arise. The relator is assessed on three sides of one lot, and on two sides of the other lot. The former, being lot No. 98 on the assessment map, is 198 feet on Fair street, 332 feet on Franklin street, and 240 feet on Pine Street. The dwelling house thereon fronts on Fair street, and is 50 feet or more from either Fair or Franklin streets. The barn on this lot fronts on Pine street, and is 50 feet therefrom. This lot is assessed for this local improvement at $1,083; and in arriving at this figure the assessor has concededly divided the lot into three lots, assessing one on Fair street 198 front feet, and allowing a depth of 100 feet; another on Pine street 240 front feet, allowing a like depth of 100 feet; and a third, the remaining land between said two lots, 132 front feet on Franklin street, and of a depth the full length of the premises, viz., 332 feet—making in all, as to this lot, a foot frontage of 570 feet. The other lot of the relator, being No. 69 on said map, is assessed in like manner at $545.30 on a foot frontage of 287 feet. From an examination of the assessments in the record, it appears very clearly that the assessor has adopted a general rule to allow 100 feet for the depth of a corner lot bordering on two streets in each of which is to

be constructed a sewer, assessing the full frontage on one street, and the excess over the 100 feet of depth, to assess as a separate lot, by the foot front, on the other of such streets.

A comparison of some of the assessments with the relator's assessment, shows the following: A block of property on the westerly side of Broadway, consisting of lots Nos. 712 to 717, inclusive, and having a total valuation of $52,500 on the general assessment roll, is assessed in this special assessment for 577 front feet at $1,096.30, being substantially 2 per cent. of its total valuation; nine other lots on the easterly side of Broadway, five of which lie contiguous to one another, are valued at $85,500 and assessed for 580 front feet at $1,102, being less than 1⅓ per cent. of their total valuation; another single lot on said street, of the valuation of $41,500, is assessed for this special tax for 336 front feet, at $638.40, being practically 1½ per cent. of the total valuation; while the relator's assessment of lot No. 98, as shown above, is at the rate of more than 9 per cent. of its total valuation, and lot No. 69, with a front footage of 287 feet, is assessed $545.30 as special tax, and has a valuation of $8,000, the tax being nearly 7 per cent. of such valuation. With no circumstances showing why the relator's property should bear such an apparently disproportionate burden, and such facts as are before us indicating that there are none, we must conclude that such assessment of his property is unjust and inequitable. At least the facts seem to establish that the relator's properties have not been assessed in proportion to the benefit they have received, if the Broadway properties have been so assessed.

It may be conceded that lots similarly situated upon a street through which a sewer is constructed may in some instances be benefited in proportion to their respective frontage upon such street, whether vacant or improved; yet it cannot be supposed that the very different classes of property, available for so many and so different purposes and scattered throughout the two wards in which this sewer is constructed, and which have been assessed at a fixed and equal rate per front foot, have derived in every instance equal benefit in proportion to frontage from the construction of such sewer. We may conceive of a business portion of a city having been swept by fire, and that the property thus made vacant might be in as great need of, and be benefited to as great an extent by, the construction of a sewer as the adjacent improved property, to which the fire had not extended. There would be a demand for buildings upon such vacant lands, and that would be their only available use. Such lands upon which buildings would be immediately erected might receive as much benefit from the construction of the sewer as those already built upon. So, also, suburban building lots might be benefited in like degree per front foot as would similar lots in the same neighborhood upon which were already erected dwellings. But the vacant portion of a large and fine lot upon a part of which is erected one large dwelling, and all of which lot is used, and intended to be continued to be used, as a family residence, would not be in like degree benefited as would the property in the business center, whether vacant or improved. Residential property, of like character and similarly situated

as other residential property, might with propriety be compared; but there should be something in common whereby the benefits derived can be fairly judged to be approximately alike. From the record before us it is clear that no such common condition exists in the relator's properties and those found upon Broadway and in very many other of the 1,975 lots upon the map of the "benefited district," which will warrant a comparison of their common benefits on the basis of the foot frontage of each. The tax upon the relator's property in this respect appears to be unjust and erroneous, and therefore we conclude that the determination of the assessor in assessing the same should be annulled.

There is a further error into which the assessor has fallen in assessing this relator's property. He has omitted from his assessment a large number of parcels of property, containing a total frontage of 1,831 feet, concededly within the district benefited by the improvement being made, thus imposing a greater burden upon the property which he has assessed. This prima facie was a clear error. In excuse and explanation for so doing, he claims that some of such properties belonged to the city, and others, in his judgment, were not in fact benefited. But the city properties were not exempt from this assessment and tax (Hassan v. City of Rochester, 67 N. Y. 528; Van Deventer v. Long Island City, 139 N. Y. 139, 34 N. E. 774), and, the others being concededly within the "benefited district" as fixed by himself under the provisions of section 147, it must be now considered that they are to some extent at least actually benefited, and therefore assessable. Hassan v. City of Rochester, supra.

We have carefully examined the objections which the defendants have made to the allowance of this writ, and do not find therein any reason why the writ should be dismissed.

We therefore conclude that the assessment against the relator's said property should be annulled, and a new assessment thereof ordered, with $50 costs and disbursements to the relator. All concur.

HOUGHTON, J., not voting, not being a member of this court at the time this decision is handed down.