WILLIAM F. WHITMORE ET ALS. *vs.* THE CITY OF HART-
FORD ET ALS.

* Third Judicial District, New Haven, June Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The court of common council of the city of Hartford adopted resolutions ordering a public work consisting of an extension and widening of certain streets; but these resolutions were not approved by majority vote of a city meeting in the manner specified in the city charter (17 Special Laws, p. 888), which provides that no resolution for public work requiring an expenditure of more than $25,000 shall be obligatory upon the city without such vote. The board of street commissioners of the city assessed benefits against and damages to owners of property adjoining the proposed improvement in such amounts that there was an excess of the damages payable by the city over the benefits assessed of $24,892.69. Included in the assessments of benefits against property owners were three, totalling $28,346.03, against the city itself on account of park and engine-house property owned by it. *Held* that since the benefits assessed may not lawfully be greater than the benefits conferred, the land owned by the city must be taken as benefited in the amount assessed against it, and hence this assessment of

* Transferred from the first judicial district.

benefits did not constitute an "expenditure" within the meaning of the charter provision, so as to bring the cost of the work to an amount which would require approval by a city meeting.

The practice of assessing benefits against the city on account of property belonging to it and fronting on the improvement or lying within the area of assessment, in the same manner and at the same rate as assessments of benefits are made against private property owners, accords with the fundamental theory and principles of special assessments, though the property may not be subject to lien; and such assessment, being made by the board of street commissioners, which, under the charter (6 Special Laws, pp. 315, 745; 7 id. p. 255; 14 id. p. 852; 17 id. p. 977), derives its power directly from the State and not through the city or its officers, is binding and conclusive upon all persons, unless set aside upon direct appeal in the manner provided.

In the present case the plaintiffs, as taxpayers of the city, sought an injunction from the Superior Court to restrain the city from proceeding with the improvement. The plaintiffs had also appealed to the judge of the Court of Common Pleas from an assessment of benefits for the improvement made against them as property owners. *Held:*—

1. That under an amendment of the charter (17 Special Laws, p. 977) the city might proceed with the work without awaiting the determination of the appeals.

2. That if the city did so proceed a property owner might be caused irreparable injury and deprived of his property before he could be effectively protected by an appeal.

3. That therefore the remedy by injunction was open to persons so situated; and that while this petition must be denied, it was not because the remedy might not be available in such cases, but because these petitioners had failed to show any illegality in the proceedings taken by the city.

Argued June 10th—decided July 22d, 1921.

Suit to restrain the defendant city from carrying out certain resolutions of its Court of Common Council ordering public works in said city, and to restrain the defendants the treasurer, the tax collector, and the controller of said city from drawing, certifying or paying any order for the payment of money of said city under authority of said resolutions or complying with any part thereof, brought to and reserved by the Superior Court in Hartford County (*Maltbie, J.*) for

the advice of this court. *Judgment advised for defendants.*

The admitted facts upon which are raised the questions of law presented for determination, are the following:—

1. The plaintiff Allyn is an inhabitant, elector and taxpayer of the city of Hartford. The plaintiff William F. Whitmore is a taxpayer but not an inhabitant of the city. The plaintiff, The Hartford Fire Insurance Company, is a taxpayer and located in the city.

2. After preliminary proceedings in accordance with the charter and ordinances of the city, its court of common council, on March 14th, 1921, adopted resolutions ordering a public work or improvement consisting of an extension of Ann Street and the widening of South Ann Street. These resolutions were approved by the mayor March 15th, 1921. This action was begun on March 16th, 1921.

3. These resolutions have never been approved by a majority vote of a city meeting duly warned and held for that purpose; nor has any vote or resolution providing for an appropriation in connection with this public improvement been submitted to or approved by a city meeting.

4. In accordance with the city charter and ordinances, benefits were assessed and damages awarded for this public work. The damages awarded amounted to $485,022.79. The benefits assessed upon owners of specially benefited property in the area of assessment, amounted to $460,130.10. Included in these assessments of benefits were three against the city on account of property which it owns, namely: on Jewell Street, for $20,000; on Pearl Street, for $5,428.57; and on Ann Street, for $2,917.46; total, $28,346.03. These assessments were made in the same manner and on the same basis as assessments were made on property owned by individuals or private corporations. In

addition, general benefits were assessed upon the city to the amount of $24,892.69.

5. The city property on Jewell Street is a strip of land, one thousand feet long, lying along Park River in Bushnell Park, a public park belonging to the city. Its property on Pearl Street and its property on Ann Street are occupied by fire-engine houses.

6. The plaintiffs, as taxpayers, will have to bear a portion of the expense of this public work, which would be their respective shares of taxes sufficient to produce $53,238.72, upon the city's present grand list of more than $263,000,000.

7. The amount of the assessment of benefits upon the city has been charged against the city, and if the city should proceed to pay the damages awarded in connection with this public work, the amount so charged will be paid by the city out of its treasury from an appropriation included in the annual budget for that purpose, and no additional tax levy is contemplated.

8. Each of the plaintiffs has been assessed for benefits upon specially benefited property owned by him or it, and has taken an appeal therefrom in the manner provided by the city charter. These appeals are now pending.

9. The proposed extension of Ann Street and the widening of South Ann Street, if carried out, would make a new main thoroughfare from the north end, to and beyond the center of the city, which would greatly benefit abutting and certain other property owners, and be a public improvement which has long been advocated and in contemplation.

10. In connection with public works in the city of Hartford, it has been the uniform practice to assess benefits against the city on account of property owned by it and fronting upon the improvement or lying within the area of the assessment, in the same manner

and at the same rate as assessments of benefits have been made against private owners in similar situation. City property so assessed has included public parks, an almshouse, a city hospital, burying grounds, the public market, pumping station, police station, and fire-engine houses. But except in one or two instances, whenever the benefits thus assessed against the city in connection with the laying out or widening of a street have exceeded the amount limited in the charter provision hereinafter quoted, the resolution ordering the work or improvement has been submitted to a vote of a city meeting. It has not been the practice to submit to a city meeting any resolution of the court of common council ordering improved street pavement requiring an expenditure of more than the sum fixed by the charter.

11. The defendant city officials intend to draw orders pursuant to the directions of the resolutions of the court of common council and to pay the persons 'to whom damages were awarded the amounts specified in the assessment, and the mayor has issued his warrant for the collection of the several amounts of benefits assessed upon persons and lands specified in the assessment and not offset by damages.

12. Many other property owners to whom damages were awarded and against whom benefits were assessed have taken appeals from their respective awards or assessments. The time limited for appeals having expired, the court of common council has directed the construction of this improvement and the city is about to enter upon and occupy the property of the plaintiffs needed therefor, notwithstanding the pendency of any appeal, and acting thus under authority of an amendment of the city charter made in 1917.

13. The charter of the city of Hartford contains the following provisions: "There shall be a court of com-

mon council of said city which shall consist of one branch, to be known as a board of aldermen, in which shall be vested the government, control and management of said city, its property and its affairs, subject to the exceptions otherwise set forth. . . . Every vote, resolution, ordinance or by-law, except as otherwise expressly provided in the charter of said city, in the passage of which a majority of said court shall have concurred, shall be submitted to the mayor for his approval; and if not by him disapproved, the same shall become valid and effectual as a corporate act of said city; . . . it being expressly provided that no vote or resolution of said common council, ordering a public work or improvement which shall require an expenditure of more than twenty-five thousand dollars, shall be obligatory on said city unless approved by a majority vote of a city meeting, duly warned and held for that purpose, which vote shall be by ballot or voting machines."

The questions which are presented by this reservation for the advice of this court are:—

1. Did the resolution ordering this public work require an expenditure by the city of more than $25,000 within the meaning of its charter provision quoted above, so that it must be approved by a majority vote of a city meeting in order to be obligatory on the city?

2. If so, since this vote or resolution has not been so approved, has the city any right to carry out this public work?

3. Are the plaintiffs, in the circumstances set out in the agreed statement of facts, entitled as taxpayers to relief by injunction?

*John T. Robinson* and *Francis W. Cole*, for the plaintiffs.

*Lewis Sperry* and *Walter S. Schutz*, for the defendants.

BURPEE, J. No objection is made to the assessment against the city on account of general benefits to the people of the city and the community at large, because by itself it would not require an expenditure by the city of more than the amount limited by the provision of the city charter which we are to consider in determining the first question submitted for our advice. That provision is quoted in the agreed statement of facts, and is contained in § 178 of the city charter revised in 1920. 17 Special Laws, p. 888. But the board of street commissioners of the city has found that three pieces of land belonging to the city will be specially benefited by the proposed public improvement to the amount of $28,346.03, and accordingly, in the assessment of benefits, has included the city among the owners of specially benefited property lying within the area of assessment. If the payment of these assessments on this property of the city should be reckoned as a part of the expenditure which this public work will require the city to make, it is plain that this expenditure will exceed $25,000, and the resolution ordering this work, since it has not been approved by a majority vote of a city meeting, is not obligatory on the city. The first and decisive question, then, is whether these assessments must be so reckoned within the meaning of this charter provision.

We have said that this provision "was obviously intended to protect the taxpayers of the city against extravagant and unnecessary expenditures by the common council"; *Park Eccl. Soc.* v. *Hartford*, 47 Conn. 89, 93; and that it is regarded "as incidentally affecting the power of the governing body only so far as may be necessary to accomplish that object." *Cook* v. *Ansonia*,

66 Conn. 413, 422, 34 Atl. 183. And we have held also, in the *Park Eccl. Soc.* case, that there is a difference between a general and a local improvement; that the first "is supposed to benefit not only the people of the city, but frequently also the community at large, and the expense is regarded as a burden," and the second "is supposed to benefit only the parties immediately interested and in excess of the cost, so that it may be regarded as an advantage rather than a burden." *Ibid.* p. 94.

The public work which is the basis of the assessments of benefits in the present case is a local improvement, incidentally carrying some general benefit to the community as a whole. The assessments have been laid upon individuals, private corporations and the city, because they are the owners of certain property specially benefited, and a small assessment upon the city on account of the general benefits. These assessments have been apportioned and fixed by the board of street commissioners of the city of Hartford, to which the General Assembly has given exclusive power to assess any part of the expense of laying out or altering any street in the city upon persons whose property is, in the judgment of this board, specially benefited thereby. 6 Special Laws, pp. 315, 745. In exercising this power, this board derives its authority directly from the State, not through the city or any of the city's boards or officers. *Hartford* v. *Hartford Electric Light Co.,* 65 Conn. 324, 330, 32 Atl. 925. To the court of common council the legislature has given the power to lay out and alter highways; but when the council has determined on and ordered the public work, the board of street commissioners has the sole power and is directly charged with the duty of carrying out the work, including the estimate of its cost, the appraisal of damages, the assessment of benefits, and the disburse-

ment of the money required. Charter (Revision 1920) §§ 107, 137, 139, 140, 141, 142; 6 Special Laws, pp. 315, 744; 7 Special Laws, p. 255; 14 Special Laws, p. 852; 17 Special Laws, p. 977; *Johnston* v. *Hartford*, 96 Conn. 142, 113 Atl. 273. In appraising damages and assessing benefits, this board acts as a court with exclusive powers. Its judgments are conclusive and binding upon all persons unless set aside by another specified State tribunal upon appeal. From its assessment of benefits upon the city in connection with this proposed public improvement, no appeal has been taken. The fundamental principle upon which such assessments are made and justified, is that the owner of the property is "assumed to be benefited by the improvement to the extent of the assessment; and it is imposed and collected as an *equivalent* for that *benefit*, and to pay for the improvement." *Bridgeport* v. *New York & N. H. R. Co.*, 36 Conn. 255, 263. The value of his property has been increased to the extent of the benefit assessed upon it. 2 Cooley on Taxation (3d Ed.) 1153, 1234, 1258, 1260; 2 Elliott, Roads & Streets (3d Ed.) § 662; 1 Page & Jones, Taxation by Assessment, § 11. The benefits assessed may not be "greater than the benefits . . . conferred." *Ferguson* v. *Stamford*, 60 Conn. 432, 446, 22 Atl. 782. The benefits conferred are at least full compensation for the expense imposed on the person assessed, and he suffers no pecunarry loss. 2 Cooley on Taxation (3d Ed.) 1154. It is true that the owner of benefited property must part with money to pay his assessment for the benefits he receives, but the money is only the measure of his benefits. His property has changed in form, not in amount; he may change its form again without loss. Both the person benefited and the person damaged by a public improvement must be fully compensated; the one for the money he parts with by the increased value of the property he

owns, and the other for the decreased value of his property by the money he receives. Accordingly, whenever damages have been awarded and benefits assessed to the owner of property on account of the same public work, the benefits will be offset against the damages; and by authority of the Hartford city charter, the city treasurer may credit such owner with the amount of benefits assessed upon him, and the entry of such credit on the books of the treasurer will have the same effect as the payment to such owner, in whole or in part, of the damages awarded to him. City Charter (Revision 1920) § 157; 6 Special Laws, p. 874. This principle has been approved and applied in this State for many years. *Nichols* v. *Bridgeport*, 23 Conn. 187, wherein it was said, on page 203: "But what objection is there to the exercise of such a power? It is said that it takes the property of individuals; that is, their money, for public use, without any compensation therefor. This is not so, either in theory, or in fact. If the assessment has been truly and justly made, the fact must be regularly ascertained to be, what the theory of the proceeding supposes it to be, *viz.*, that the party whose money is taken, is locally and peculiarly benefited, over and beyond the ordinary benefit which, as one of the community, he receives in all public improvements, to the precise extent of the assessment." And it was held that if the benefits equal or exceed the damages, the owner of the property sustains no damage. To the same effect was the decision in *Trinity College* v. *Hartford*, 32 Conn. 452, 478.

In connection with public works in the city of Hartford, it has been the uniform practice to assess benefits against the city on account of property belonging to it and fronting on the improvement or lying within the area of assessment, in the same manner and at the same rate as assessments of benefits have been made upon

private owners in similar situation. This practice has never been challenged, and accords, we think, with the fundamental theory and principles of local or special assessments. 2 Cooley on Taxation (3d Ed.) pp. 1153, 1155, 1234. "Even public property is often subjected to these special assessments; there being no more reason to excuse the public from paying for such benefits than there would be to excuse from payment when property is taken under eminent domain." *Ibid.* p. 1236; 1 Page & Jones, Taxation by Assessment, § 584; *Scammon* v. *Chicago,* 42 Ill. 192, 196; *People* v. *Reis,* 109 N. Y. App. Div. 748, 96 N. Y. Supp. 597; *Spokane* v. *Fonnell,* 75 Wash. 417, 135 Pac. 211; *County Comrs. of El Paso* v. *Colorado Springs,* 66 Colo. 111, 180 Pac. 301; *New Orleans* v. *Warner,* 175 U. S. 120, 20 Sup. Ct. 44; *Edwards & Walsh Const. Co.* v. *Jasper County,* 117 Iowa, 365, 90 N. W. 1000; and note in 132 Amer. St. Reps. 300, 301, 306.

By its charter (Revision 1920, § 139, 6 Special Laws, p. 315), the city has been given power to assess the whole or any part of the expense of a public work "upon the persons whose property is . . . specially benefited thereby." In *Hartford* v. *West Middle District,* 45 Conn. 462, it was held that under this provision an assessment of benefits could not be laid upon a school district on account of the laying out of a street near land bought and used solely for school purposes, because "the district as a corporation" could not be directly or specially benefited, "or their property . . . rendered any more valuable for the purpose for which they use it, and for which they must continue to use it, if not for all time, at least for a very long period." In *State* v. *Hartford,* 50 Conn. 89, it was decided that this general power did not "by necessary implication" include the State as a party on which assessments might be made, because "statutes limiting rights" are

not "to be construed to embrace the government or sovereignty, unless by express terms or necessary implication such appears to have been the clear intention of the legislature." Subsequently the justice of including in such an assessment these particular owners of property, although their ownership be merely beneficial and for a specific use, and although the owner be the sovereign State or one of its governmental agencies, was specifically recognized in an amendment of the city charter (Revision 1920, § 166, 13 Special Laws, p. 504), which granted full power to the city to assess benefits and appraise damages upon or in favor of real estate belonging to the State or to any school district within the limits of the city. That is, the State and the school district were classed with persons in law who possess and enjoy property. The principles of equality which suggested this legislation and which authorize and justify assessments of this kind, apply with equal force to assessments on property belonging to the city and held for any purpose. The city is a "body . . . corporate, in fact and in name," composed of all the inhabitants of the State who are electors and dwell within its territorial limits, and who by the name of "The City of Hartford" are "persons in law, capable . . . to purchase, hold and convey any estate, real and personal," and absolutely vested with the possession and enjoyment of all property whatsoever which has ever become "vested in the inhabitants of said city in their corporate capacity." 5 Special Laws, p. 317; City Charter (Revision 1920) § 3. The theory underlying local or special assessments is that they affect alike all persons who possess and enjoy specially benefited property. In relation to public improvements, this corporation, known as the City of Hartford, stands in the same position as the State, the school district, the private corporation, or the individual. Like any of

them, it must be assumed that the city receives "an equivalent for that benefit" assessed, that the value of its property has been increased to that extent, that the benefits conferred are at least full compensation for the cost imposed, and that it suffers no pecuniary loss. See authorities cited above.

It is truly said that the city must pay the damages awarded on account of any public work; but its charter provides a means by which it may reimburse itself through assessments of special benefits. These are charged against the several property owners, and paid in some instances by money belonging to them, and in some by offsets against damages awarded. In the same way the benefits assessed against the city are charged against the city, and are paid by money belonging to it. In every case the person who pays is the person in law who owns property benefited to the extent of the payment, who therefore bears no burden nor loss, but receives an advantage. The principles which authorize and justify these proceedings in any case, authorize and justify them in the case of a municipal corporation possessing property specially benefited by a local improvement.

The right and power to make an assessment of benefits upon the owner of property specially benefited by a public work, does not depend on the power to place a lien on the property. *New Haven* v. *New Haven & Westville R. Co.*, 38 Conn. 422. We ought not to assume that the city will seek to avoid a legal obligation put upon it to carry out a public improvement which its governing body has determined on.

It is true that by our General Statutes, § 1160, all property belonging to any city is exempt from taxation. But while an assessment of benefits is an exercise of the taxing power of the State, "it is never spoken of in charters of cities and boroughs, or in the general law,

or in popular intercourse, as a tax." While it is "in a general sense a tax, it is one of a peculiar nature. It is a *local* assessment imposed occasionally, as required, upon a limited class of persons interested in a *local* improvement; who are assumed to be benefited by the improvement to the extent of the assessment." *Bridgeport* v. *New York & N. H. R. Co.*, 36 Conn. 255, 262. They stand apart from the general burdens imposed for State and municipal purposes, and are governed by principles that do not apply to the general levy of taxes. In addition to the common taxation, special assessments demand that special contribution, in consideration of a special benefit, shall be made by the persons who receive it. The demand for the special contribution is justified by the fact that those who are to make it, while they are made to bear the cost of the public work, are supposed to suffer no pecuniary loss thereby, because their property is increased in value to an amount at least equal to the sum they are required to pay. 2 Cooley on Taxation (3d Ed.) 1153; 1 Page & Jones, Taxation by Assessment, §§ 35, 39.

It would seem to require no argument to show that the taxpayer needs no protection against a resolution of the common council which will confer an advantage upon him, or that an expenditure which results in no loss nor burden for him to bear should not be classed as "extravagant" or "unnecessary."

While all the inhabitants of the city of Hartford possess and enjoy all the property of the corporation and are benefited by general public improvements and indirectly by local improvements, by no means all of them bear any part of the expense of making any of them. Nevertheless many of them are electors entitled to vote in a city meeting. The money to defray all expenses of the city is obtained from its general revenue, which is derived almost wholly by taxation levied only

upon those of its inhabitants who own taxable property within the city limits. Many of these taxpayers are not electors entitled to vote in a city meeting. There is no occasion for the nontaxpaying voters to vote on a question of a local improvement the expense of which is not borne by them; and the interests of the taxpayers will be protected sufficiently if the voters in a city meeting devote their attention to matters in which they have a direct interest and which require an expense to be paid by the public at large.

For these reasons, and mindful of these principles of law which we have mentioned, we conclude that the practice long prevailing in the city of Hartford, of assessing benefits against it on account of specially benefited property owned by it and situated in the assessment area, in the same manner and at the same rate as benefits have been assessed against private owners of specially benefited property in the same locality, is equitable and legal; that the amount of the special benefits the city has received, as conclusively determined by the board of street commissioners, at least equals the expense by the city on account of this public work, and the city will suffer no loss by reason thereof; and that, within the meaning of this charter provision, that amount should not be reckoned as a part of the expenditure by the city required by this public work. In our opinion, the charter provision in question has no application to a public work or improvement unless the expenditure which it will require all the taxpayers of the city to make, on account of general benefits to the people of the city, shall be more than $25,000.

The total damages awarded in connection with this public improvement are $485,022.79, and this sum the city will pay. The total benefits assessed are $460,230.10, and this sum the city will recover either

in money collected, or in offsets against damages awarded, or in the increased value of its own property. The remainder is the only part of the expense which may be regarded as a burden upon the people of the city at large, which must be borne by them, and in which they have any direct interest. There can be no occasion for them to vote on the question of a local improvement requiring expenditure of another kind. On the other hand, being compensated fully for the payment of their assessment for special benefits, the taxpayers will be protected in their other interests by limiting the application of this provision of the charter to that portion of the expenditure which must be paid by the city at large. In the case of this proposed public improvement, this portion is less than $25,000. Hence this provision of the charter has no application nor effect.

While the determination of these questions finally disposes of this cause, another question of law has been presented in this reservation for our advice which it is desirable to determine at this time in the interest of simplicity and economy in action in the future. It is whether in such circumstances as appear in this proceeding a taxpayer is entitled to relief by injunction. The plaintiffs in this suit are not only taxpayers but owners of real estate situated within the area covered by the assessment, and have all taken appeals from the assessment of benefits laid upon them and their property under the provisions of the city charter, and these appeals are now pending. Nevertheless, the plaintiffs allege that they have no adequate remedy at law, and contend that they have a right to equitable relief by injunction. The city charter provides that "an appeal shall be allowed to any person aggrieved by any appraisal of damages or assessment of benefits, to the judge of the Court of Common Pleas for the county of

Hartford"; that if he shall find cause, he may alter any appraisal or assessment and reapportion the amount of damages or benefits; and that he "shall have, for the purpose of disposing of said appeal, all the power of the Superior Court." City Charter (Revision 1920) §§ 152–156; 7 Special Laws (1873) p. 527. An amendment in 1917 added the provisions that "such appeal shall not necessitate delay in the action of the court of common council in laying out, altering or making such public work or improvement, or in the actual execution thereof," and that "the city may enter upon and occupy the land or property needed for such work or improvement, notwithstanding the pendency of any such appeal." 17 Special Laws, p. 977; City Charter (Revision 1920) § 141. With such power as this, it is manifest that the city may cause irreparable injury to a property owner before he could be effectively protected by an appeal. While the judge on appeal is enquiring into the validity of all the proceedings in which an assessment is based, and before he shall have set aside or modified them, the property owner may have been deprived of his property, and if the proceedings be ultimately declared invalid, of compensation also. The owner cannot be denied the right to challenge in some effective action the legality of the process by which his land or property is to be taken from him without his consent. The charter of the city of Hartford in its latest form does not secure this right by the process called an appeal from an award of damages or assessment of benefits. There is in it no adequate remedy at law. Hence an application to a court of equity for a restraining injunction is a proper, if not the only, means which the property owner has to protect his rights. This is not merely a case of misspending the public funds or resisting the levy of a tax illegally levied, as was *New London* v.

*Brainard,* 22 Conn. 552; nor is it an application to restrain the city from enforcing assessment warrants for the expenses of a sewer, involving an interference with the speedy collection of public taxes, which was considered in *Dodd* v. *Hartford,* 25 Conn. 232; nor is it like the case of *Waterbury Savings Bank* v. *Lawler,* 46 Conn. 243, 246, wherein it was decided that an injunction would not lie to restrain the collection of taxes because "ultimately the petitioner will be sure to vindicate his title in a court of law and successfully defend his possession." In the suit in *Filiau* v. *Hartford,* 94 Conn. 510, 109 Atl. 884, which was not, as this is, an attempt to prevent the carrying out of a public work, but only to avoid the payment of an assessment of benefits, we held that "neither the land nor the owner would be in danger of such injury as that the extraordinary powers of a court of equity need be invoked for protection." p. 518. *Johnston* v. *Hartford,* 96 Conn. 142, 113 Atl. 273, was an action under the statute asking that a lien to secure payment of an assessment of benefits from the paving of a street be declared invalid, and we held that a property owner might be estopped by his laches from attacking the validity of the lien in an action to restrain its enforcement or to discharge it. In the bringing and conduct of this suit there have been no laches, and the land and the owners are in danger of such serious injury that only the extraordinary powers of a court of equity can protect them. Here is involved not only the constitutional safeguard that the property of no person shall be taken for public use without just compensation therefor, but also that no person shall be deprived of his property but by due course of law. For in this suit the fundamental allegations and claims are that the city intends and is ready to enter upon and take possession of the plaintiffs' property under the pretended authority of resolutions

and proceedings invalid in law. If these allegations and claims were true, both our State Constitution and that of the United States would protect the owners in their possession of their property, and for that purpose a court of equity would restrain any action of the city until it should be shown that it would be by due course of law. It is true that the plaintiffs will be fully compensated for the property of which they are about to be deprived and that their loss, by reason of increased taxation, will be insignificant; but none the less their constitutional right stands to protect them in the possession of their property until they part with it willingly or until they lose it by due process of law. To enforce this right they would be entitled to ask a court of equity to exercise its power to restrain by injunction, and if, as in the present case, their petition be denied, it would be only because they have failed to establish a sufficient foundation in fact.

As we have said, the resolution of the common council ordering this public improvement did not require an expenditure by the city of more than $25,000, within the meaning of this charter provision, and therefore it was valid, and the city and its officers, notwithstanding the pending appeals, have authority under the charter to proceed at once to carry out the resolution and to begin the actual execution of the work without delay.

Therefore the Superior Court is advised that upon the pleadings and agreed statement of facts, judgment should be rendered for the defendants.

No costs will be taxed in this court.

In this opinion the other judges concurred.