In the Matter of Cornell University, Appellant, *v.* Village of Cayuga Heights, Respondent.

Third Department, March 6, 1961.

*Allan H. Treman* for appellant.

*Charles H. Newman* for respondent.

REYNOLDS, J.   Cornell University appeals from an order of the Tompkins County Court which dismissed its petition for a reversal of an apportionment of the expense of maintenance and construction of the Cayuga Heights Village Sewer System as it affected certain unimproved lands owned by petitioner and known as the Savage farm, after a trial without a jury.   The contention of petitioner-appellant is that the apportionment was unlawful, unequal, erroneous and inequitable as it was applied to the aforesaid property and that three disinterested freeholders of the village should be appointed to make a new apportionment. The Savage farm consists of a 90-acre tract and is presently being used by the College of Agriculture for experimental purposes.   Each assessment was based on three factors: an assessment on land charges, a sewer use rental and an average width of lot charge.   The sole dispute involves the average width of lot charge which was computed at 35 cents a foot on 4,200 feet. The village arrived at the average width of lot figure of 4,200 feet for the Savage farm property in the following manner: Savage farm is bounded by two intersecting roads.   The village assessed 1,500 feet along North Triphammer Road and 500 feet along Hanshaw Road.   In addition, the Savage farmhouse parcel was assessed 200 feet.   The remaining 2,000 feet was based on frontage along an interior " Y "-shaped sewer main which was constructed across the Savage farm property in connection with the sewer extension.

Cornell contends that the average width of lot charge should be computed on the basis of 1,500 feet and that the 4,200 feet figure is erroneous for two reasons.   (1) It was not determined with regard to the benefits Cornell derived from the new sewer extension.   In this connection, Cornell particularly objects to the assessment of 2,000 feet along the " Y "-shaped sewer main which crosses its property.   It maintains that these internal sewers were constructed primarily to benefit other property and that they serve no purpose favorable to appellant.   (2) It is arbitrary and unjust in that a heavier burden has been placed on the Cornell property than on other property.   Cornell argues

that the method of assessment adopted by the Village Board in connection with average width of lot charges was that a parcel would be taxed on the average width of lot parallel with the main street frontage; that the average width of lot of Savage farm parallel with the main street frontage (i.e. North Triphammer Rd.) is 1,500 feet; that the village therefore deviated from its method of assessment in connection with the Savage farm property when average width of lot was computed by using the frontage of two intersecting streets plus frontage along an internal sewer; and that internal sewers were constructed across other property and other parcels fronted on two roads but Savage farm was the only property assessed for frontage on two streets plus frontage along an internal sewer.

The Board of Trustees of the Village of Cayuga Heights contends that the trunk sewer line across the farm was a benefit to the property; that the method of assessment adopted by the board was average width of lot within 200 feet of a sewer main whether or not the main was parallel with the main road, that other property owners were assessed for frontage on two roads and at least one other landowner was assessed for frontage along an internal sewer main.

In 1956 Cornell (as did other landowners in connection with their property) gratuitously executed a right of way agreement which permitted the Village of Cayuga Heights to lay sewers across the Savage farm property. There was no agreement, however, as to how the property would be assessed in the future. A trunk sewer line was subsequently laid across the interior south end of the Savage farm in the shape of a '' Y '', which followed '' Y ''-shaped valleys or gulleys existing at that end of the property. Mr. Crandall, the Village Engineer, who drafted the plans for the sewer extension and participated in the determination of assessments testified that the '' Y '' sewer lines were planned and constructed across the Savage farm for a variety of reasons. The Savage farm is bounded by North Triphammer Road and by Hanshaw Road. There was a need for an interior sewer through the Savage farm property to provide sewer service for the university's frontage on North Triphammer Road. The interior sewer also served to drain the sewage from the area east of the Savage farm, which included the Texas Lane area and the Schoenfeld farm. It would serve the needs of the south third of the Savage farm itself, including its frontage on Hanshaw Road, in that a trunk sewer line would be available should the farm be developed as a residential subdivision some time in the future.

The Village Board could properly consider the benefit that an internal sewer would be to the property in the future, in the event that the property should be subdivided for purposes of residential housing, *Matter of Klock* (30 App. Div. 24); *Matter of City of New York (Juniper Ave.)* (233 N. Y. 387). On this record it cannot be said that the sewer extension did not increase the market value of the property, and the extent of the benefit is for the board's determination. Nevertheless there must not be discrimination. Section 268 of the Village Law guides the Village Board in apportioning the costs of sewer construction where there is a local assessment. '' Such expense shall * * * be apportioned upon the lands within such area in proportion as nearly as may be *to the benefit which each lot or parcel will derive therefrom,* and the ratio of such benefit shall be established.'' (Emphasis supplied.)

The statute prescribes '' benefit '' as the guide to the apportionment of costs. Because of the irregular shape of certain parcels the Village Board used average width of lot parallel with main street frontage. This is a well-recognized method of assessment though not mentioned in the statute. The Village Board could deviate from this method where other criteria would result in more accurately determining the '' benefit '' (i.e., assessing footage along an internal sewer main over 200 feet from the highway), but in so doing they must see that other property which was benefited by the sewer extension in a manner similar to petitioner's property must be assessed according to that benefit so as not to place a proportionately higher burden on petitioner. In our view that is exactly what was done here in that the Rachel Hanshaw property, part of which is admittedly of a similar nature to petitioner's property, was not assessed for 640 feet of internal sewer over 200 feet from the highway. This apparent discrimination, although pointedly raised by petitioner, was not explained or disputed in the evidence or in respondent's brief. Our only conclusion from the record is that the Rachel Hanshaw property was benefited by the '' Y ''-shaped sewer in a manner similar to the petitioner's property and no adequate reason is given for this inequality and discrimination.

In *People ex rel. Connelly* v. *Reis* (109 App. Div. 748, 750), the court said: '' [I]f it appears from the record before us that, as a matter of fact, the assessment of the relator's property is unequal as compared with the assessment of other similar property similarly situated, and is unjust, this court is at liberty to correct such assessment, even though the rule or general principle upon which the assessment was made is not an illegal or erroneous one.''

The order should be reversed and a recomputation directed as to the assessment on the Savage farm by three disinterested freeholders of the village, without costs.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Order reversed and a recomputation directed as to the assessment on the Savage farm by three disinterested freeholders of the village, without costs.