OPINION OF THE COURT
Stephen A. Bucaria, J.
Preliminary Statement
The petitioner brings on by order to show cause an application to amend the caption to name AG-Metropolitan Endo, L.L.C. as successor to AG-II Acquisition Corp., to add a second cause of action which alleges that the property is not subject to ad valorem levies imposed by the special districts in which it is located; for a declaration that the respondents’ revocation of part of the exemption accorded the property is illegal, improper and in violation of applicable law; that the action by the Assessor causing the petitioner to be billed for special district taxes is illegal, arbitrary, and in violation of the payment in lieu of taxes (PILOT) agreement between the petitioner and the Town of Hempstead Industrial Development Agency; and, for summary judgment declaring as a matter of law that ad valorem levies may not be charged in addition to the payments agreed to in the PILOT agreement.
The respondents take the position that, while general ad valorem taxes, that is, those based on the value of the property, are not chargeable to the Town of Hempstead Industrial Development Agency, and the County is limited to the receipt of its share of PILOT payments, special ad valorem levies and special assessments are not taxes within the meaning of Real Property Tax Law § 102 (14), and are therefore not excluded from payment under the terms of the PILOT agreement.
Background
This proceeding involves two facilities at the corner of Stewart Avenue and Endo Boulevard, Garden City, known as 1000 Stewart Avenue and 500 Endo Boulevard. 1000 Stewart Avenue was specifically designed for Endo Laboratories. It is constructed of poured concrete, with approximately 165,000 square feet on six levels. It was subsequently sold to du Pont and then finally to Bristol-Myers Squibb. As a vacated and obsolete factory, it was difficult to market. This was because of obsolescence, the presence of asbestos, as well as its configuration and use restric *545 tions. Eventually Corporate National Realty, LLC and the Garibaldi Group undertook the project of marketing the property. After opening the market to users other than pharmaceutical companies, the property was sold to Metropolitan Realty Associates and its partner, Angelo, Gordon & Co. (AG-Metropolitan Endo, L.L.C.), on August 18, 2005 for $7,390,000. The estimated cost of renovation, upgrading, asbestos removal and reconstruction was $26,000,000.
AG-Metropolitan (the company) entered into a PILOT agreement with the Town of Hempstead Industrial Development Agency (the agency) dated August 1, 2005. The agency agreed to take title to the approximately 7.54-acre property. The property was to be leased to the company. Because, pursuant to section 874 (1) of the New York State Industrial Development Agency Act (General Municipal Law, art 18-A, tit 1, § 874 [1]) the agency is exempt from taxes, the company and the agency agreed that the company would make payments according to schedule A of the agreement.
By letter dated August 17, 2007, the Chairman of the Board of Assessors advised the agency that the exemption extended to the agency for real estate taxes did not include “special ad valorem levies and special assessments,” and, as a result, the agency would be billed for such levies and special assessments applicable to the properties. This position was confirmed to the company by letter dated January 16, 2008 from the agency. As noted, the Assessor billed the agency, which passed it on to the company, the sum of $250,615.51, or $51,698.79 more than called for in the PILOT agreement.
Because the agency has deducted the amount payable under the PILOT agreement, the impact is that neither the Town nor other nondistrict entities receive the benefit of the tax payments, only charges by special districts are now being paid.
Discussion
The respondents urge the court to adopt a novel approach to the tax exempt status of industrial development agencies. Novelty implies neither correctness nor error; but it does require heightened inquiry.
The initial consideration for the court is the nature and purpose of an industrial development agency (IDA). It is a creature of statute, specifically, General Municipal Law § 850 et seq. The pertinent portion of section 858 is as follows:
“858. Purposes and powers of the agency
*546 “The purposes of the agency shall be to promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing industrial, manufacturing, warehousing, commercial, research and recreation facilities including industrial pollution control facilities, educational or cultural facilities, railroad facilities, horse racing facilities and continuing care retirement communities, . . .
“(10) To acquire, construct, reconstruct, lease, improve, maintain, equip or furnish one or more projects; . . .
“(15) To enter into agreements requiring payments in lieu of taxes. Such agreements shall be in writing and in addition to other terms shall contain: the amount due annually to each affected tax jurisdiction (or a formula by which the amount due can be calculated), the name and address of the person, office or agency to which payment shall be delivered, the date on which payment shall be made, and the date on which payment shall be considered delinquent if not paid. Unless otherwise agreed by the affected tax jurisdictions, any such agreement shall provide that payments in lieu of taxes shall be allocated among affected tax jurisdictions in proportion to the amount of real property tax and other taxes which would have been received by each affected tax jurisdiction had the project not been tax exempt due to the status of the agency involved in the project.”
General Municipal Law § 854 (17) defines such payments in lieu of taxes as:
“any payment made to an agency, or affected tax jurisdiction equal to the amount, or a portion of, real property taxes, or other taxes, which would have been levied by or on behalf of an affected tax jurisdiction if the project was not tax exempt by reason of agency involvement.”
Here the agency and the petitioner entered into a PILOT agreement calling for payments according to a schedule attached to the agreement. The agreed-upon payments, ranging from $449,543 for the 2006-2007 school and 2007 general tax years to $597,202 for the 2015-2016 school and 2016 general tax years, together with a potential additional five-year schedule, were intended to be in lieu of real property taxes which would *547 otherwise be levied were not the agency tax exempt. The respondents claim that while the agency is exempt from general and school taxes, it is not exempt from special ad valorem levies, special assessments and service charges against real property. The statute, General Municipal Law § 874, states as follows:
“§ 874. Tax exemptions
“(1) It is hereby determined that the creation of the agency and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state of New York and is a public purpose, and the agency shall be regarded as performing a governmental function in the exercise of the powers conferred upon it by this title and shall be required to pay no taxes or assessments upon any of the property acquired by it or under its jurisdiction or control or supervision or upon its activities.”
While the foregoing language providing that the agency “shall be required to pay no taxes or assessments” seems clear and unambiguous on its face, the matter is complicated by the language of the PILOT agreement itself. It provides in part as follows:
“WHEREAS, pursuant to Section 874 (1) of the Act, the Agency is exempt from the payment of taxes and assessment imposed upon real property owned by it, other than special ad valorem levies, special assessments and service charges against real property located in the Town of Hempstead (including any existing incorporated village or any village which may be incorporated after the date hereof, within which the Facility is or may be wholly or partially located), Nassau County and Uniondale School District which are or may be imposed for special improvements or special district improvements.” (Emphasis supplied.)
Quaere: are the ad valorem assessments in the amount of $250,615.51 imposed by the districts appearing on the 2008 general tax levy issued to Town of Hempstead Industrial Development Agency taxes, or are they special ad valorem levies, special assessments, or service charges from which the agency, by its own language, states it is not exempt? Of note is the fact that the same charges by the districts in exhibit C are also included in the calculation of the PILOT payment. They are duplicative, except that exhibit C, calculated by the County, is based on a higher taxable value.
*548 The respondents rely primarily upon opinions of counsel from the Office of Real Property Services (ORPS) and Matter of Cerro v Washington County Bd. of Supervisors (247 AD2d 726 [3d Dept 1998]). Counsel for ORPS acknowledges that a reading of General Municipal Law § 874 (1) is clear on its face and would exclude all taxes, including “general taxes, special assessments and possibly special ad valorem levies.” (1 Ops Counsel SBEA No. 3 [1971].) But counsel finds the water muddied by the language of subdivision (2) which provides that “[a]ny . . . property of the agency, shall be exempt from taxation,” and concludes that “taxation” as used in this portion of the statute includes only general taxes and not special assessments and special ad valorem levies. (1 Ops Counsel SBEA No. 3 [1971].)
This reliance on the language of subdivision (2) is itself problematical. It states that “[a]ny bonds or notes issued pursuant to this title, together with the income therefrom, as well as the property of the agency, shall be exempt from taxation, except for transfer and estate taxes.” It has nothing to do with real estate taxes, but relates to tax-free bonds and notes, which are subject only to transfer and estate taxes.
Matter of Cerro v Washington County Bd. of Supervisors (270 AD2d 679 [3d Dept 2000]) involved a challenge to the determination of the Washington County Board of Supervisors to sell a parcel of county-owned property to the IDA, the highest bidder. The losing bidder claimed that such sale was barred by a provision of the Board’s own rules which precluded sale to a bidder owing taxes on real property in the County. While acknowledging that “although IDA properties are exempt from general real property taxes, they are not exempt from special district taxes (247 AD2d 726, 727 n, supra),” the reason for the affirmance was not based upon that determination, but rather that “since the Board’s decision did not violate a State statute we were not permitted to substitute our judgment for the Board’s . . . .” (Id. at 680.) Thus, the comment by the Court is best considered dicta, since it did not constitute the basis for the decision. The decision does not elaborate on the nature of the “special district taxes.”
The court must, however, evaluate the language of the PILOT agreement itself, which excludes “special ad valorem levies, special assessments and service charges against real property” from the exemption from real property taxes and assessments available to the agency. The investigation of this language focuses on three aspects:
*549 • What are special ad valorem levies, special assessments and service charges?
• By what authority can they be considered beyond the exemption for taxes and assessments authorized for the agency?
• Is not the PILOT payment schedule based upon the various ad valorem assessments which the Assessor now seeks to reimpose in addition to the PILOT payments?
If one carefully reads the italicized portion of the previously quoted paragraph from the PILOT agreement, it is clear that the words “other than special ad valorem levies, special assessments and service charges” are modified by the words “which are or may be imposed for special improvements or special district improvements.” The difference between special improvements and ad valorem assessments is of great significance.
The taxes with which most taxpayers are familiar are the general and school. There is no question in anyone’s mind that these constitute taxes in every sense of the word. But, as pointed out in the reply affidavit of counsel for the petitioner, there are ad valorem assessments imposed on all properties which benefit from the services the district provides, among them garbage disposal, sewage treatment, and fire protection. They are applied at a uniform tax rate multiplied by the assessment.
For all practical purposes, they are taxes. Were it not for the rapid, and somewhat uncontrolled, expansion of Nassau County shortly after World War II, the more than 300 special taxing districts would probably not have developed, and the cost of fire protection, sewage and garbage service would have been rolled into the general tax.
On the other hand, there are circumstances in which a municipality incurs an expense which does not benefit all taxpayers in the district, but rather is a special benefit to only one, or perhaps a select few. For example, were a shopping center to be built beyond the limit of existing sewage lines, but within the special sewer district, the initial cost of extending the service to this single taxpayer may be passed on to the specific beneficiaries of this special benefit, consistent with the benefit realized, and would not constitute a charge against the residents of the district generally. (Matter of Cornell Univ. v Village of Cayuga Hgts., 13 AD2d 1 [3d Dept 1961].) This is an example of a special assessment, based solely on the special ben *550 efit to the individual taxpayer. It is not a tax within the ordinary sense, and, in fact, the cost is to be placed on all benefitted properties, not on the basis of the assessment, but in an amount consistent with the special benefit received. (Town Law § 202; Matter of Kermani v Town Bd. of Town of Guilderland, 40 NY2d 854 [1976].) Reading the quoted language of the PILOT agreement in its entirety, it is clear that the intent was to acknowledge the exemption of the IDA from all taxes, but not from the costs for special benefits which a special district may extend to the property.
General Municipal Law § 858 states, in pertinent part, as follows:
“The purposes of the agency shall be to promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing industrial, manufacturing, warehousing, commercial, research and recreation facilities including industrial pollution control facilities, educational or cultural facilities, railroad facilities, horse racing facilities and continuing care retirement communities, . . . and thereby advance the job opportunities, health, general prosperity and economic welfare of the people of the state of New York and to improve their recreation opportunities, prosperity and standard of living; and to carry out the aforesaid purposes, each agency shall have the following powers: . . .
“(15) To enter into agreements requiring payments in lieu of taxes. Such agreements shall be in writing and in addition to other terms shall contain: the amount due annually to each affected tax jurisdiction (or a formula by which the amount due can be calculated), the name and address of the person, office or agency to which payment shall be delivered, the date on which payment shall be made, and the date on which payment shall be considered delinquent if not paid. Unless otherwise agreed by the affected tax jurisdictions, any such agreement shall provide that payments in lieu of taxes shall be allocated among affected tax jurisdictions in proportion to the amount of real property tax and other taxes which would have been received by each affected tax jurisdiction had the project not been tax exempt due to the status of the agency involved in the project. A *551 copy of any such agreement shall be delivered to each affected tax jurisdiction within fifteen days of signing the agreement. In the absence of any such written agreement, payments in lieu of taxes made by an agency shall be allocated in the same proportions as they had been prior to January first, nineteen hundred ninety-three for so long as the agency’s activities render a project non-taxable by affected tax jurisdictions.”
The foregoing is part of a list of reforms designed to increase an IDA’s responsibility to sponsoring municipalities and the public. (L 1993, ch 356, § 23.) Article 18-A of the General Municipal Law authorizes, but does not mandate, PILOT agreements. The essential purpose of such agreements is to reimburse affected taxing authorities for revenue lost by virtue of IDA involvement. (Matter of Hudson Falls Cent. School Dist. v Saratoga County Indus. Dev. Agency, 217 AD2d 330 [3d Dept 1995].)
As required by General Municipal Law § 858 (15) the PILOT agreement in this case provided for the specific calculation of the estimated taxes lost by the affected tax jurisdictions in proportion to the amount of real property taxes that they would have received were it not for the involvement of the agency. The payments are calculated on the basis of taxes otherwise payable to the Town of Hempstead, Uniondale School District, Nassau County and appropriate special districts. These levies are calculated by applying the applicable tax rates to the taxable valuation of $122,031.
The PILOT payments are in lieu of taxes, including those payable to special districts. The respondents’ demand for full payment of special assessments and levies of the special taxing districts constitutes double billing with respect to those districts. To rub salt in the wound, the respondents appear to have assigned an assessment to the property which is, at the very least, arbitrary. Their own records reflect the purchase of the property for $7,390,000 in August 2005. It is hard, therefore, to comprehend their estimate of fair market value of $21,738,360 as of January 2006, four months later. It is against this extraordinarily increased value, limited by the phase-in requirement of Real Property Tax Law § 1805, that the respondents have calculated the assessments due to special taxing districts. Standing alone, they exceed the PILOT payments intended to reimburse not only the special *552 taxing districts, but also the otherwise lost general and school taxes.
Aside from the fact that the respondents’ position would require the tenant in agency-owned property to pay the same special district assessments twice, it is contrary to the clearly-stated policy in General Municipal Law § 858. The petitioner in this case, in the words of the executive director of the town agency, “has done an outstanding job converting this subject property from a wasting hulk to a major contributor of jobs to the economy and region.” It is undoubtedly true that the provision for known payments in lieu of taxes enables a developer to plan and finance major projects such as the subject property. Subjecting a developer to the vagaries of the Nassau County Assessment Department could well constitute a death knell for such projects. The property is valued by the respondents at $21,738,360 as of January 2, 2006, $14,300,310 as of January 2, 2007, and $15,051,410 as of January 2, 2008. These estimates may be comprehensible to the respondents, but they are not to the court. Subjecting a developer to taxes based on these values (twice no less) would be not only incomprehensible, but devastating to a development such as the subject property.
The petitioner’s argument that the Assessor is not empowered to unilaterally impose taxes or pronounce tax policy is persuasive. The methodology for the determination of tax policy is vested with the County Legislature, to the extent it is not reserved to the County Executive. A determination that IDA projects are subject to ad valorem taxes for the benefit of special districts is one of enormous consequence. The powers of the Board of Assessors and the Chairman of the Board of Assessors are circumscribed by article VI of the Nassau County Charter, more formally known as the County Government Law of Nassau County. Section 602 of that law obligates the Board to assess all property, while section 605 requires the Chairman to prepare the assessment roll. The authority to make appropriations and levy taxes is reserved to the Nassau County Legislature under article I, § 103 (7).
It is obvious that the Assessor has bypassed the Board of Assessors and assumed the authority of the Legislature. His actions in this proceeding are ultra vires, and without effect.
Conclusions
The motion to amend the caption to include AG-Metropolitan, L.L.C., the successor to AG-II Acquisition Corp. is granted and *553 the caption shall hereafter read as follows:
In the Matter of the Application of AG-METROPOLITAN ENDO, L.L.C. AS SUCCESSOR TO AG-II ACQUISITION CORP., Index No.: 412595/07
Calendar No.: 2007T3636
Petitioner,
- against -
THE BOARD OF ASSESSORS AND THE BOARD OF ASSESSMENT REVIEW OF COUNTY OF NASSAU,
Respondents.
The motion to amend the petition to add a second cause of action as set forth in the proposed amended petition is granted. The motion for judgment declaring that the imposition of taxes above and beyond the amount agreed to in the PILOT agreement constitutes an unlawful revocation of part of the exemption afforded the agency is granted; the motion for a declaration that the action of the respondent Assessor in causing the petitioner to be billed for ad valorem assessments in excess of the PILOT agreement is arbitrary and violates the PILOT agreement is granted-, the motion for a declaration that ad valorem taxes may not be charged in addition to the amounts agreed to under the PILOT agreement is granted-, and, the petitioner is entitled to a refund of the amount paid to the respondents in excess of the amount provided for in the PILOT agreement, together with interest from the date of payment. Payment shall be made no later than 30 days postjudgment.